# OCTOBER, 1942.

THE LONG ISLAND RAILROAD COMPANY, A CORPORATION, APPELLANT, v. MIDLAND VALLEY LUMBER COMPANY, A CORPORATION, RESPONDENT.—164 S. W. (2d) 930.

St. Louis Court of Appeals.   Opinion filed October 6, 1942.

*Fordyce, White, Mayne, Williams & Hartman* and *G. Carroll Stribling* for appellant.

148

*Leahy, Walther & Hecker,* and *Hugo M. Walther* for respondent.

SUTTON, C.—This is an action to recover freight charges in the amount of $252.71 upon a shipment of lumber moving in interstate commerce from Siler City, North Carolina, to Long Island City, New York.

The action was commenced on September 8, 1937, in a justice of the peace court, whence it went on appeal to the circuit court. The trial in the circuit court *de novo* was had before the court without a jury, and resulted in a judgment in favor of the defendant. Plaintiff appeals.

Plaintiff's evidence shows that the lumber in queston was originally shipped from Siler City by defendant, through its agent, Wrenn Brothers, to defendant as consignee at Potomac Yards, Virginia. The original bill of lading was issued by the Atlantic and Yadkin Railway Company. Defendant is listed as both consignor and consignee in the bill of lading. When the shipment reached Potomac Yards, in Virginia, defendant by a letter to plaintiff, directed the reconsignment of the shipment to Klein Brothers at Long Island City, New York. The original bill of lading is the standard form bill prescribed by the Interstate Commerce Commission. On its face there is a provision that if the shipment is to be delivered to the consignee without recourse on the consignor, the consignor shall sign the following statement:

"The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges."

Under this provision is a space designated as for "Signature of Consignor."

This provision was not signed.

On the reverse side of the bill is the following provision:

"The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may lawfully be authorized to do so, no carrier by railroad shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges, except that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation, shall make delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges."

The shipment left Siler City on September 6, 1934, and arrived in Long Island City on September 12th. The shipment was delivered to one Grossman, who was the regular trucker for Klein Brothers. He receipted for the shipment and the car was released by Klein Brothers on September 18th at five P. M.

There is no dispute that the proper freight charges for the shipment amounted to a total of $252.71.

Klein Brothers were placed on plaintiff's credit list on May 25, 1912, and remained on the list until December 11, 1934. Patrons on the list were given forty-eight hours in which to pay their bills.

Ex Parte order No. 73 of the Interstate Commerce Commission, 171 I. C. C. R. 268, provides as follows:

"The carrier, upon taking precautions deemed by it to be sufficient to assure payment of the tariff charges within the credit periods herein specified, may relinquish possession of freight in advance of the payment of the tariff charges thereon and may extend credit in the amount of such charges to those who undertake to pay such charges, such persons herein being called shippers, for a period of 48 hours computed as hereinafter set forth."

Dennis A. O'Leary, freight agent of plaintiff at Long Island City, testified that the car of lumber was available for delivery on September 12, 1934, and that the freight bill was mailed to Klein Brothers on that date; and when payment was not received on the morning of September 15th Klein Brothers were communicated with by telephone, and again on September 16th; that the first letter requesting payment was made on September 18th.

Arthur L. Naylor, freight agent of plaintiff at Long Island City, testified that at the time of the delivery on September 12, 1934, he mailed the freight bill out to Klein Brothers.

John Savage, Jr., an agent of plaintiff, testified that the car was available to Klein Brothers on September 12, 1934; that the substance of the letter dated September 18, 1934, was to call the debtor's attention to the fact that the credit period had expired; that a letter mailed September 28th was a request for payment of the bill; that no reply to either letter was received; that a letter was mailed on October 19th, which was a further request for payment; that a further request was mailed on November 13th; that Klein Brothers replied to this letter on November 15th, offering post-dated checks, but that plaintiff did not accept this offer.

Carl Roelich, an agent of plaintiff, testified that the shipment was delivered about September 12th or 13th.

A paper captioned "Statement of Miscellaneous Charges," put in evidence by plaintiff, shows that the removal of the lumber from the car was commenced on September 15, 1934, and was completed on September 18th.

Plaintiff offered in evidence a certified copy of the records of the United States District Court of the Eastern District of New York, showing that an involuntary petition in bankruptcy was filed against Klein Brothers on December 24, 1934.

Plaintiff also offered in evidence records showing that plaintiff filed a claim against the bankrupt estate of Klein Brothers, covering the freight charges in suit here; that the bankrupt estate paid a small percentage to wage claimants, who had a right of preference under

the bankruptcy act, but that plaintiff's claim being a general claim, nothing was received from the estate thereon; and that on June 8, 1937, the bankruptcy proceeding was closed.

The testimony for defendant is to the effect that in August, 1937, it received from plaintiff a letter in reference to the payment of the freight charges; that this letter constituted the first notice that defendant had of the fact that the charges on the shipment had not been paid by Klein Brothers; that defendant had a policy of credit insurance under which it was given protection against loss on shipments; that in January, 1935, defendant made a claim for the value of the lumber under this policy, and the claim was paid; that defendant had not made any claim for the amount of the freight charges because it was not aware of the fact that such charges had not been paid, but that no inquiry had been made by defendant to find out whether or not the freight charges had been paid.

Plaintiff contends on this appeal that under the undisputed evidence defendant is liable as a matter of law to pay the freight charges sued for. Defendant contends (1) that plaintiff delivered the lumber to the consignee after the expiration of the credit period authorized by the Interstate Commerce Commission and contrary to the provisions of the bill of lading, and therefore has not made a case against defendant for the freight charges; and (2) that by delivering the lumber to the consignee after the period of credit had expired, by pursuing his claim against the consignee, by filing a claim against the consignee's bankrupt estate, and by not promptly notifying defendant that its freight charges had not been paid, elected to look to the consignee for payment, and by its actions is estopped from making claim against defendant.

The law is well established that a carrier ordinarily has a right to look for his compensation to the person who required him to perform the service by causing the goods to be delivered to him for transportation. That person is generally the shipper named in the bill of lading, or the consignor. Even though there is a stipulation in the bill of lading providing that the consignee shall pay the freight charges, that does not of itself relieve the consignor. The consignee, it is true, may be sued if he has received the goods in pursuance of a bill of lading imposing the payment of the freight charges on him. But the liability of the consignee does not depend, in such case, on the assumption that the original shipper would not be liable, but on a new contract to pay the freight charges evidenced by the bill of lading and the reception of goods under it. There is no shifting of liability. The contract of the consignor and that of the consignee are not inconsistent with each other; each is an original contract based on sufficient consideration. Interstate carriers are subject to and compelled to make fixed freight charges or rates which are stated in the tariff filed with the Interstate Commerce Commission.

Descrimination between shipper is prohibited by statute. Hence interstate carriers are required not only to make but to collect for like services uniform charges fom shippers. Though the goods are only to be delivered upon payment by the consignee of the freight charges, the consignor is not relieved on account of a delivery by the carrier of the goods to the consignee without collecting the charges. This right to collect from the consignor can only be barred by limitations or contract. The contract for carriage may embody a provision that the consignor assumes no liability for the payment of the freight charges, and that the carrier is to look for payment to the consignee alone. The carrier cannot by any act estop itself from exacting the lawful freight rate. If the carrier could so estop itself, then it would lie within the carrier's power, by purposely putting itself in a position where it could not exact the lawful rate of a shipper it desired to favor, to render nugatory one of the main designs of the Interstate Commerce Act—the prevention of descrimination between shippers; and for the law to countenance the doctrine of estoppel is for the law to say through the courts that the carrier is estopped from doing what the statute requires that it must do—collect the lawful rate in all cases, and nothing greater and nothing less by any means or device whatsoever. Unavailing pursuit of an insolvent consignee does not bar recovery against the consignor. Equitable considerations may not serve to preclude the carrier from recovering the full amount of the lawful traffic charges. The carrier may demand the amount from the consignee or may collect from the consignor, but cannot make an election nor be held to an estoppel without violating the purpose and spirit of the Interstate Commerce Act. In order to prevent preferences, it is obliged to collect its freight charges, and if it cannot get them from one party it must look to the other. Delivery of the goods to the consignee without collection of the freight charges is no release of the consignor, nor waiver of the right to recover from him. Notice to the consignor of the failure of the consignee to pay the freight charges is not required and want of such notice is no defense. [Pennsylvania R. Co. v. Marcelletti (Mich.), 240 N. W. 4; Western Maryland Ry. Co. v. Cross (W. Va.), 123 S. E. 572; Cleveland, C. C. & St. L. Ry. Co. v. Southern Coal & Coke Co. (Tenn.), 248 S. W. 297; Louisville & Nashville R. C. v. Central Iron & Coal Co., 265 U. S. 59; Illinois Central R. Co. v. A. B. Friedman & Co. (Mo. App.), 161 S. W. (2d) 440; Yazoo & Mississippi Valley R. Co. v. Picher Lead Co. (Mo. App.), 190 S. W. 387; Davis v. Ford (N. C.), 137 S. E. 328; Mellon v. Stockton & Lampkin (Mo. App.), 35 S. W. (2d) 612; Dare v. New York Central R. Co., 20 Fed. (2d) 379; New York Central R. Co. v. Federal Sugar Refining Co., 235 N. Y. 182; Baldwin v. Scott County Milling Co., 307 U. S. 478; Pittsburgh, C. C. & St. L. Ry. Co. v. Fink, 250 U. S. 577.]

In Louisville & Nashville R. Co. v. Central Iron & Coal Co., *supra*, the court said:

"The shipment being an interstate one, the freight rate was that stated in the tariff filed with the Interstate Commerce Commission. The amount of the freight charges legally payable was determined by applying this tariff rate to the actual weight. Thus, they were fixed by law. No contract of the carrier could reduce the amount legally payable; or release from liability a shipper who had assumed an obligation to pay the charges. Nor could any act of omission of the carrier (except the running of the statute of limitations) estop or preclude it from enforcing payment of the full amount by a person liable therefor."

In that case the court further said:

"Ordinarily, the person from whom the goods are received for shipment assumes the obligation to pay the freight charges; and his obligation is ordinarily a primary one. This is true even where the bill of lading contains, as here, a provision imposing liability upon the consignee. For the shipper is presumably the consignor; the transportation ordered by him is presumably on his own behalf; and a promise by him to pay therefor is inferred (that is, implied in fact), as a promise to pay for goods is implied, when one orders them from a dealer. But this inference may be rebutted, as in the case of other contracts."

In our case the bill of lading in express terms makes the consignor liable for the freight charges, except when the consignor stipulates, by signature, in the space provided for that purpose on the face of the bill of lading that the carrier shall not make delivery without requiring payment of such charges, and the carrier, contrary to such stipulation, shall make delivery without requiring such payment. Defendant did not sign the stipulation on the face of the bill of lading, and there is no evidence at all of any agreement or understanding that the defendant should in an event be relieved of its primary liability for the freight charges.

Under the undisputed facts of this case, plaintiff is entitled to recover the freight charges sued for. The judgment of the circuit court should be reversed and the cause remanded with directions to enter judgment in favor of plaintiff against defendant for the amount of such freight charges, with interest at six per cent per annum from the date of the commencement of this suit. The Commissioner so recommends.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly reversed and the cause remanded with directions as recommended by the Commissioner. *McCullen* and *Anderson, JJ.,* concur; *Hughes, P. J.,* not sitting.

ON MOTION FOR A REHEARING.

SUTTON, C.—Defendant, on motion for a rehearing, complains that we have not discussed Yazoo & Mississippi Valley Railroad Co. v. Zemurray, 238 Fed. 789. In that case the proper amount of the freight was $45, but the railroad company made delivery to the consignee, and by error collected only $9. Thereafter, demand was made on the consignee for the balance. He did not pay. The railroad company wrote him several letters, but did not sue him. It then made demand on the consignor. The consignor refused to pay, and the railroad company sued him. The District Court held that the railroad company having elected to collect freight charges from the consignee, it would be inequitable to permit the carrier to change its base and proceed against the consignor. On appeal, the Circuit Court of Appeals apparently approved this ruling, but affirmed the judgment of the District Court on other grounds. That decision, in so far as it supports the defendant's view in this case, is out of accord with all of the other decisions that have been brought to our attention, including the decisions of the United States Supreme Court. We therefore do not follow it.

The Commissioner recommends that defendant's motion for a rehearing be overruled.

PER CURIAM:—The foregoing opinion of SUTTON, C., is adopted as the opinion of the court. The motion for a rehearing is accordingly overruled. *McCullen* and *Anderson, JJ.,* concur; *Hughes, P. J.,* not sitting.