**PYRAMID NAT. VAN LINES, Inc. v. GOETZE et al.**

No. 763.

Municipal Court of Appeals for the District of Columbia.

April 13, 1949.

Motion Overruled June 3, 1949.

See 66 A.2d 693.

---

Herbert G. Pillen, of Washington, D. C., for appellant.

John L. Laskey and Carson Gray Frailey, both of Washington, D. C., for appellees.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Appellant, an interstate common carrier of freight by motor vehicle, moved household goods belonging to appellees, husband and wife, from Hollywood, California, to Monrovia, Maryland. The goods were turned over to appellees upon delivery by them to the truck driver of a personal check representing the exact amount of the legal charge. Appellees stopped payment on the check and appellant sued for the amount of the check plus protest charge. Appellees denied liability upon the ground that the contract of carriage had not been fulfilled in that certain of the articles transported had been damaged through the carrier's negligence and also because the carrier had failed to secure certain insurance coverage on the shipment as specified by appellees in the order for service. Appellees also filed a counterclaim seeking recovery for the damages to the household goods, but the counterclaim was voluntarily withdrawn during trial. The trial court found that appellees' goods were substantially damaged and that appellant had breached its agreement to place full insurance upon the goods and that therefore appellant had failed to

maintain the burden of proof in showing substantial performance of its contract of carriage and concluded that appellant was not entitled to recover on the check. This appeal followed.

■ The charge sought to be enforced was for an interstate shipment and was fixed by law and subject to tariffs on file with the Interstate Commerce Commission.[1]

Section 223 of the Interstate Commerce Act, 49 Stat. 565, relating to motor carriers provides: "No common carrier by motor vehicle shall deliver or relinquish possession at destination of any freight transported by it in interstate or foreign commerce until all tariff rates and charges thereon have been paid, except under such rules and regulations as the Commission may from time to time prescribe to govern the settlement of all such rates and charges, including rules and regulations for weekly or monthly settlement, and to prevent unjust discriminatoin or undue preference or prejudice * * *."[2]

Section 217(b) of the same Act, 49 Stat. 561, (which is modeled after 49 U.S.C.A. § 6(7), relating to railroads) provides: "No common carrier by motor vehicle shall charge or demand or collect or receive a greater or less or different compensation for transportation or for any service in connection therewith between the points enumerated in such tariff than the rates, fares, and charges specified in the tariffs in effect at the time; and no such carrier shall refund or remit in any manner or by any device, directly or indirectly, or through any agent or broker or otherwise, any portion of the rates, fares, or charges so specified, or extend to any person any privileges or facilities for transportation in interstate or foreign commerce except such as are specified in its tariffs * * *."[3]

■ As construed by the Supreme Court, these provisions of the Interstate Commerce Act mean that carriers are required to collect the established rates from all alike in cash.[4] By accepting delivery of the goods consigned to themselves the shippers became bound to pay the tariff charges.[5] Legal rates defined by tariff schedules on file with the Interstate Commerce Commission can not be varied either by contract or by tort of the carrier.[6] An interstate carrier cannot by any act estop itself from exacting the lawful freight rate and recovering the full amount from consignee or consignor.[7]

■ Even assuming, therefore, all the facts found by the trial court, namely, that appellant breached its contract by damaging appellees' goods in transit and failing to take out insurance as directed by appellees, such facts did not constitute a sufficient defense to appellant's action. The law is clear that any breaches by the carrier of its contract with the shipper must be established by way of counterclaim or a separate suit by the shipper.[8] Here, as already stated, a counterclaim was filed but was withdrawn.

[1] Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U.S. 59, 44 S.Ct. 441, 68 L.Ed. 900; Eastern Shore of Virginia Produce Exchange v. New York Cent. R. Co., 4 Cir., 97 F.2d 565.

[2] 49 U.S.C.A. § 323.

[3] 49 U.S.C.A. § 317(b).

[4] Chicago & N. W. R. Co. v. Lindell, 281 U.S. 14, 50 S.Ct. 200, 74 L.Ed. 670, and cases there cited.

[5] Baldwin v. Scott County Milling Co., 307 U.S. 478, 59 S.Ct. 943, 83 L.Ed. 1409, rehearing denied 308 U.S. 631, 60 S.Ct. 65, 84 L.Ed. 526; Louisville & N. R. Co. v. Central Iron & Coal Co., supra; Pittsburgh, C. C. & St. L. R. Co. v. Fink, 250 U.S. 577, 40 S.Ct. 27, 63 L.Ed. 1151; cf. F. Burkhart Mfg. Co. v. Fort Worth & D. C. Ry. Co., 8 Cir., 149 F.2d 909; New York Cent. R. Co. v. Frank H. Buck Co.,

[2] Cal.2d 384, 41 P.2d 547; 9 Am.Jur., Carriers, § 624.

[6] Keogh v. Chicago & N. W. R. Co., 260 U.S. 156, 43 S.Ct. 47, 67 L.Ed. 183; F. Burkhart Mfg. Co. v. Fort Worth & D. C. Ry. Co., supra; Baltimore & O. R. Co. v. Illinois Steel Co., 316 Ill.App. 516, 46 N.E.2d 144, reversed on other grounds 320 U.S. 508, 64 S.Ct. 322, 88 L.Ed. 259.

[7] Chesapeake & O. R. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983; Pittsburgh, C. C. & St. L. R. Co. v. Fink, supra; Norton v. Shotmeyer, D.C.D.N. J., 72 F.Supp. 188; Long Island R. Co. v. Midland Valley Lumber Co., 237 Mo. App. 147, 164 S.W.2d 930; 9 Am.Jur., Carriers, § 164.

[8] Chicago & N. W. R. Co. v. Lindell, supra; Eastern Shore of Virginia Produce Exchange v. New York Cent. R. Co., supra.

Appellees being nonresidents of the District of Columbia, jurisdiction was obtained by attachment before judgment levied upon a local bank deposit. Appellees urge that the bringing of the suit in the District of Columbia rather than in Maryland, where delivery of the goods was made, in some way changes the legal questions presented. No authorities have been cited in support of this argument, and we know of no basis for it. Regardless of the place of suit, it remains true that by the Interstate Commerce Act appellant was required to collect the freight charges. The present suit merely represents an effort by appellant to reduce appellees' check to cash as required by the statute.

Reversed.