Daniel J. GOODMAN and Betty Goodman, Appellants,

v.

NATIONAL AIRLINES, INCORPORATED, Appellee.

No. 3440.

District of Columbia Court of Appeals.

Argued March 23, 1964.

Decided June 26, 1964.

Nathan L. Silberberg, Washington, D. C., for appellants.

Andrew T. A. Macdonald, Washington, D. C., for appellee.

Before HOOD, Chief Judge, and QUINN and MYERS, Associate Judges.

HOOD, Chief Judge.

This appeal is from a summary judgment in favor of the defendant (now appellee) National Airlines, Incorporated. In granting judgment the trial court had before it the complaint and answer, the deposition of the male plaintiff (hereafter called plaintiff), the answer of defendant to interrogatories, and exhibits accompanying the motions for judgment. The facts most favorable to plaintiff, as disclosed by those papers, were the following.

On March 13, 1962, plaintiff purchased from defendant five round trip tickets for himself, his wife and their three children, covering a flight from Washington, D. C., to Sarasota, Florida, on April 18 and a return flight on April 28. Before purchasing the tickets plaintiff, in a telephone conversation with an agent of defendant, inquired: "Do I have to reconfirm when I get to Florida?" The agent replied: "You don't have to reconfirm these." Relying upon this assurance plaintiff took no steps to reconfirm his reservations after arriving in Florida. On the day he was to return plaintiff and his family went to the airport at Sarasota 30 or 45 minutes before flight time, and he was told that their spaces had been cancelled because of lack of reconfirmation, and that no space would be available until three days later. As a result plaintiff and his family were forced to go to Tampa and return home by train.

In this action, entitled as one for breach of contract and exemplary damages, plaintiff sought recovery of expenses of $307.25, reimbursement of the cost of the unused return tickets amounting to $211.86 and punitive damages of $20,000. The trial court awarded judgment to plaintiff for the cost of the unused return tickets, to which defendant conceded plaintiff was entitled, and gave summary judgment against plaintiff for the balance of the claim.

The basis for the defendant's motion for summary judgment and for the grant of the motion by the court was that the tickets were sold subject to defendant's tariff regulations filed with the Civil Aeronautics Board, that these regulations provided for cancellation of reservations from points in Florida unless the passenger advised the carrier of his intention to use his reservations at least six hours before scheduled flight departure time, and that such regulations were binding by law upon both carrier and passenger.

■ It has long been established that when a carrier is required by law to file and publish tariff schedules, such schedules are binding upon both the carrier and the public. In Pyramid Nat. Van Lines v. Goetze, D.C.Mun.App., 65 A.2d 595, 597 (1949), this court, citing numerous authorities, said:

"Legal rates defined by tariff schedules on file with the Interstate Commerce Commission cannot be varied either by contract or by tort of the carrier."

This same rule has been extended to cover carriers by air. Section 403(a) of the Federal Aviation Act of 1958 [1] requires that every air carrier file its tariffs with the Civil Aeronautics Board showing, to the extent required by the Board's regulations, all classifications, rules, regulations, practices, and services in connection with such air transportation. In United States v. Associated Air Transport, Inc., 5 Cir., 275 F.2d 827, 832, 833, (1960), it was said:

"Filed as it was under compulsion of § 403(a) of the Civil Aeronautics Act of 1938, the tariff carried the statutory

mandate of § 403(b) that it and it alone was to be the sole standard for services to be rendered and charges assessed and collected. In the implementation of this stringent legislative policy, the courts have been equally emphatic that the basis for the charge or credit must be found in the tariff. If it is not in the tariff, it is not allowable. It is not a mere matter of contract. For 'a rate once regularly published is no longer merely the rate imposed by the carrier, but becomes the rate imposed by law.' Louisville & N. R. Co. v. Dickerson, 6 Cir., 1911, 191 F. 705, 709. 'Such tariffs, at least those which are factors in determining the carrier's charges, have the force and effect of statutes.' American Ry. Express Co. v. American Trust Co., 7 Cir., 1931, 47 F.2d 16, 18. The tariffs are both conclusive and exclusive; they may not be added to through reference to outside contracts or agreements or understandings or promises."

The above language was quoted in full and with approval by the United States Court of Claims in Slick Airways, Inc. v. United States, 154 Ct.Cl. 417, 292 F.2d 515, 519 (1961). There are numerous other airline cases holding a published tariff to be controlling in various situations. [2]

■■ It is plain that the tickets in the instant case were sold subject to the tariff regulations. They could not otherwise be legally sold, and they were so marked. The purchaser was bound by the regulations even though he lacked knowledge of their provisions. [3] A misstatement by an agent of the carrier does not change the rule, even though it works a hardship in an individual

1. 72 Stat. 758, 49 U.S.C. § 1373(a).

2. See Lichten v. Eastern Airlines, Inc., 2 Cir., 189 F.2d 939, 25 A.L.R.2d 1337 (1951); Wittenberg v. Eastern Air Lines, Inc., D.C.E.D.S.C., 126 F.Supp. 459 (1954); Furrow & Co. v. American Airlines, D.C.W.D.Okla., 102 F.Supp. 808 (1952); Mack v. Eastern Air Lines, Inc., D.C.Mass., 87 F.Supp. 113 (1949); Mus-

tard v. Eastern Air Lines, Inc., 338 Mass. 674, 156 N.E.2d 696 (1959); Jones v. Northwest Airlines, Inc., 22 Wash.2d 863, 157 P.2d 728 (1945).

3. Western Union Telegraph Co. v. Esteve Bros. & Co., 256 U.S. 566, 41 S.Ct. 584, 65 L.Ed. 1094 (1921); Boston & M. R. Co. v. Hooker, 233 U.S. 97, 34 S.Ct. 526, 58 L.Ed. 868 (1914).

case.[4] As shown by copies of the tariff certified by the C.A.B., reconfirmation of the space was required in Florida at least six hours before departure time, and appellant concedes this was not done. It follows that there was no breach of contract by the carrier.

██ Appellant argues that the provision relating to reconfirmation is improper and irrelevant in a tariff schedule, and that improper matter inserted in a tariff schedule is not binding on a passenger. He relies on cases holding that "tariff" connotes a system of rates and charges, and that provisions in a tariff schedule relating to or limiting claims for personal injuries to a passenger are gratuitous insertions and not binding on the passenger.[5] On the other hand there are cases holding that a carrier's regulations filed with the Civil Aeronautics Board must be deemed valid until declared otherwise by the Board.[6] Without attempting to decide that question, we hold that the provision relating to reconfirmation was properly included in the tariff schedules. The concept of a tariff as a rate or charge is too narrow in view of the statute and the regulations of the Board. The Board's regulation requires that the tariff schedule contain not only the rates and charges but also the terms, conditions, or other provisions which "affect the rates, fares or charges." [7] Therefore the schedule must contain provisions with respect to all services and facilities which affect the rates, and it appears clear to us that a re-

quirement of reconfirmation of space has a direct effect upon the fares charged.[8] In Trammell v. Eastern Air Lines, D.C. W.D.S.C., 136 F.Supp. 75 (1955), where a passenger failed to reconfirm his reservation and as a consequence his space was sold to another, it was held that the passenger was bound by the tariff provision requiring reconfirmation.

██ A final question remains. The tickets were purchased on March 13 for use on April 18 and return on April 28. The tariff provision here involved was issued on March 15 to become effective on April 15. As far as the record discloses there was no similar provision on the date the tickets were purchased. The question is whether the passenger was bound by a tariff provision not in effect when he purchased his tickets but in effect on the date of his return trip. In our opinion he was. A contract with a carrier is subject to the tariff schedules and as those schedules are subject to change, the contract is subject to possible changes in the schedules.[9] As was said in Slick Airways, Inc. v. United States, 154 Ct.Cl. 417, 292 F.2d 515, 519 (1961):

> "Once the tariff became effective, the carrier was obliged to enforce it and it did not waive its power to do this because of a clerical error in billing. The tariff must control in the event of an inconsistency between it and a contract of carriage."

Affirmed.

4. Louisville & N. R. Co. v. Maxwell, 237 U.S. 94, 35 S.Ct. 494, 59 L.Ed. 853 (1915).

5. See Turoff v. Eastern Airlines, Inc., D.C. N.D.Ill., 129 F.Supp. 319 (1955); Bernard v. United States Aircoach, D.C.S.D. Cal., 117 F.Supp. 134 (1953); Shortley v. Northwestern Airlines, D.C.D.C., 104 F.Supp. 152 (1952).

6. Lichten v. Eastern Airlines, Inc., 2 Cir., 189 F.2d 939, 25 A.L.R.2d 1337 (1951); Herman v. Northwest Airlines, 2 Cir., 222 F.2d 326 (1955), cert. denied 350 U.S. 843, 76 S.Ct. 84, 100 L.Ed. 751.

7. 14 C.F.R. 221.38(a).

8. The opinion of the Civil Aeronautics Board in The Pittsburgh-Philadelphia No-Reservation Fare Investigation, Dockets 10,900 and 10,969, Nov. 27, 1961, appears to us to clearly establish that a requirement of reservations, or lack of such requirement, is a matter affecting rates.

9. Armour Packing Co. v. United States, 209 U.S. 56, 28 S.Ct. 428, 52 L.Ed. 681 (1908).