Michael ANGEL et al., Plaintiffs,

v.

PAN AMERICAN WORLD AIRWAYS, INC., Defendant.

Civ. A. No. 78–1931.

United States District Court, District of Columbia.

July 30, 1981.

1174

William P. Skinner, Washington, D.C., for plaintiffs.

Carrol E. Dubuc, Temple Ratcliffe, Haight, Gardner, Poor & Havens, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

JOYCE HENS GREEN, District Judge.

This matter is before the Court on the motion of the defendant, Pan American World Airways, Inc. ("Pan American"), for summary judgment, the plaintiffs' opposition, and the numerous subsequent filings both pre- and post-oral argument on the motion. Plaintiffs, Michael Angel and his mother, Carolyn Angel, brought this action for injunctive and declaratory relief, seeking also $15,000 compensatory and $10,000 punitive damages for defendant's refusal to transport Michael Angel from Germany to the United States aboard its carrier in the summer of 1977, solely because he has cerebral palsy and was not accompanied by an attendant.[1] A jury trial has been demanded as to those issues raised by their complaint for compensatory and punitive damages.

Jurisdiction is asserted on several bases: 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1332 (diversity), 28 U.S.C. § 1337 (commerce), 28 U.S.C. §§ 2201–02 (declaratory judgment) and the doctrine of pendant jurisdiction. Venue is alleged under 28 U.S.C. § 1391(a), (b) and (c).

Solely for purposes of this summary judgment motion, plaintiffs' factual allegations are accepted as true and are as follows:

Both plaintiffs are residents of the State of Maryland. The defendant is a New York corporation, having there its principal place of business; it also transacts business in the District of Columbia. Pan American is an air carrier engaged in interstate and foreign air transportation pursuant to a certificate of public convenience and necessity issued by the Civil Aeronautics Board, is regulated by the laws of the United States relating to such interstate and foreign commerce, including the Federal Aviation Act (49 U.S.C. § 1301 et seq.) and applicable regulations, and, in connection with such business, has published and filed tariffs with the Civil Aeronautics Board covering carriage of passengers in international transportation, inter alia, between Frankfurt, West Germany and the United States, as required by 49 U.S.C. § 1373(a).

Pan American originally moved for partial summary judgment on the theory that it could not establish as a matter of law that plaintiffs were not entitled to the refund value of the passenger ticket at issue. When plaintiffs' pleadings acknowledged that the ticket was without refund value because it was used on the Lufthansa flight taken by plaintiff Michael Angel subsequent to the incident complained of herein, defendant sought summary judgment as to all claims. Plaintiffs oppose the motions for partial and complete summary judgment. The matter has been fully explicated by written and oral argument.

Plaintiff, then a student at the University of Maryland, has cerebral palsy, is confined to an electric wheelchair, is unable to walk, to feed himself, or to perform some personal functions without assistance. He can, however, crawl rapidly and take care of many other personal needs, including getting undressed, taking a bath, brushing his teeth, washing his hair, laying out his clothes, setting the alarm clock and getting into bed. He has no difficulty in descending a flight of stairs. His ordinary means of movement is crawling, at which he is quite adept and by which he maneuvers himself. Plaintiff is able to get into and out of an automobile unassisted, has taken trips on the District of Columbia subway system and has flown across the Atlantic Ocean without an attendant and without difficulty. He has repeatedly flown by himself between Washington, D.C. and Florida. He can, and has, seated himself inside an airplane. He can go without food for the duration of a flight and is able, when necessary, (and has so done on four occasions) to get out of his seat, crawl to the lavatory, use the facilities and return to his seat without assistance. In June of 1977, he made arrangements to travel on a charter flight to Europe, a trip he had made twice before without any inconvenience or

---

1. All references to plaintiff in the singular will hereinafter refer to Michael Angel unless otherwise specified.

discomfort. Prior to his departure, Carolyn Angel called Pan American's local reservation agent to ascertain whether her son would be permitted to return on Pan American in the event he curtailed his trip for any reason. The agent assured her, after being fully advised of his physical condition, that he would be able to return via Pan American. Mr. Angel did, in fact, subsequently decide to return earlier and, accompanied to the Frankfurt airport by a friend, attempted to purchase a return ticket from Pan American in late June, 1977. There, a Pan American ticket agent advised him that he could not fly via Pan American unless accompanied by an attendant. Learning of these events, Ms. Angel again telephoned a local Pan American ticket agent to resolve the problem. She was advised to cable her son a prepaid ticket and have him appear at the airport on the date of the flight to assure transport. Plaintiffs followed these instructions but a Pan American agent in Frankfurt on July 11, 1977 again refused Michael Angel permission to board, unless accompanied by an attendant, even though he appeared with both a prepaid ticket and a letter stating that Mr. Angel was physically capable of flying without an attendant. He was told at that time by both the ticket agent and supervisor that he was being denied transportation since he could not walk and was travelling without an attendant.

After more delay, Pan American arranged with Lufthansa Airlines to transport plaintiff to Boston, attended by an extra flight attendant. He was then transferred to a domestic carrier for the flight to Washington, D.C. Contrary to the assurances given Michael Angel, the Pan American agent in Germany failed to notify Ms. Angel to advise her of the flight change. Ms. Angel learned of this change from another source and was able to make arrangements to meet the appropriate flight.

As a result of the above events, plaintiffs assert a cause of action for breach of contract; violations of tariffs, Civil Aeronautics Board (CAB) and Federal Aviation Administration (FAA) regulations; misrepresentation; gross negligence; and breach of a common carrier's duty to the public, all of which have allegedly caused plaintiffs mental distress, physical hardship, and financial loss.[2] Pan American's motion to stay discovery was granted until resolution of the instant motion.

Pan American argues that it acted in conformity with all applicable regulations, tariffs, and procedures pertaining to international transportation by air carriers of handicapped or incapacitated persons and essentially that this Court does not have jurisdiction to entertain this action under the doctrines of primary jurisdiction of the CAB and the FAA and failure to exhaust administrative remedies.

The doctrine of primary jurisdiction, the defendant argues, is particularly applicable to the area of aviation which is subject to extensive federal regulation by the CAB and FAA under the Federal Aviation Act of 1958 (the "Aviation Act"), 49 U.S.C. § 1301 *et seq.* This statute, *inter alia*, seeks to promote uniformity of the air transportation industry and facilitate resolution of technical questions as to airline safety, aircraft design, technology, and federal transportation policy. Pan American invokes the primary jurisdiction doctrine, asking that the Court stay its pen to permit the expert administrative agencies to consider the important questions presented herein prior to a judicial decree.

Originating in *Texas and P. R. Co. v. Abeline Cotton Oil Co.*, 204 U.S. 426, 27 S.Ct. 350, 51 L.Ed. 553 (1907), "primary jurisdiction" provides that courts will not determine a controversy involving a question which is within the jurisdiction of an administrative agency prior to that tribunal's decision where the issue involves the exercise of administrative expertise and where uniformity of ruling is especially important to comply with the purposes of the

**2.** On February 2, 1978, plaintiff filed a Complaint with the Civil Aeronautics Board seeking suspension of tariffs pursuant to 49 U.S.C. § 1482(g) and the rejection of tariffs pursuant to 49 U.S.C. § 1373, alleging discrimination against handicapped individuals, which action still pends (Def. Motion Ex. C).

regulatory scheme. *See Kappelmann v. Delta Air Lines, Inc.,* 539 F.2d 165, 169 (D.C.Cir. 1976), *cert. denied,* 429 U.S. 1061, 97 S.Ct. 784, 50 L.Ed.2d 776 (1977). The Supreme Court has noted that "[n]o fixed formula exists for applying primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *United States v. Western Pacific Ry.,* 352 U.S. 59, 64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956). *See also Board of Education v. Harris,* 622 F.2d 599 (2d Cir. 1979), *cert. denied,* 449 U.S. 1124, 101 S.Ct. 940, 67 L.Ed.2d 110 (1981).

■ This case does not present a matter that the Court should withhold decision upon pending some action by the CAB or the FAA. Initially, at dispute is the meaning of the tariff existing in June, 1977. In short, plaintiffs argue that the tariff, properly interpreted, would not have prohibited Michael Angel from boarding the Pan American flight leaving Germany. Mr. Justice Brandeis, writing for the Supreme Court in *Great Northern Ry. v. Merchants Elevator Co.,* 259 U.S. 285, 42 S.Ct. 477, 66 L.Ed. 943 (1922), expressly held that "the attainment of uniformity does not require that in every case where the construction of a tariff is in dispute, there shall be a preliminary resort to the" administrative agency. *Id.* at 291, 42 S.Ct. at 479. "It is not true," the Justice noted, "that uniformity in construction of a tariff can be attained only through a preliminary report to the [Interstate Commerce] Commission to settle the construction in dispute." *Id.* at 290, 42 S.Ct. at 479. This reasoning applies with equal force in this litigation, for the plaintiffs' chief contention is that the Pan American agent in Germany erred in his interpretation of the tariff then existing when he refused to let Michael Angel board. The parties have briefed and argued the meaning of the tariff before the Court and that question of law is now at issue, without need for factual determinations within the CAB's or the FAA's special expertise.

Additionally, the parties' submissions reflect that uniformity is not critical in constructing guidelines for carriage of the handicapped. Although the tariff relating to transportation of the physically handicapped in effect in 1979 is not at issue here, it demonstrates that airlines have adopted different procedures concerning handicapped passengers, including varying maximum numbers of such persons who might be carried on different types of aircraft. *See* Defendant's Exhibit M. Although uniformity is important, especially in a technically complex area as aviation, the airlines' own conduct belies the notion that a single rule must be promulgated. Accordingly, one of the bases for invoking primary jurisdiction is simply not present in this case.

The defendant next asserts that Michael Angel has not exhausted his administrative remedies, and therefore that this Court should not act pending the decision by the CAB on his complaint. The exhaustion requirement is well-settled as an instrument to avoid premature adjudication of disputes. *See American Dairy of Evansville, Inc. v. Bergland,* 627 F.2d 1252 (D.C.Cir. 1980); *National Conservative Political Action Committee v. Federal Election Commission,* 626 F.2d 953 (D.C.Cir. 1980).

■ Plaintiff's complaint has been pending since 1978 at the CAB; it would be unreasonable to dismiss this action now so that he could pursue his remedies at the administrative level. As obvious as is the exhaustion requirement, so is its exception that one need not resort to the administrative agency where to do so would be a futile act. *See Porter County Chapter of Izaak Walton League of America v. Costle,* 571 F.2d 359 (7th Cir.) *cert. denied* 439 U.S. 834, 99 S.Ct. 115, 58 L.Ed.2d 130 (1978); *Davis v. Bolger,* 496 F.Supp. 559 (D.D.C.1980).

■ Defendant contends that this action is barred by 49 U.S.C. § 1487, which provides that an action alleging a violation of 49 U.S.C. § 1372 may only be brought by the CAB. § 1372, "Permits to foreign air carriers," is not in issue in this litigation. Rather, plaintiffs allege discrimination in violation of § 1374 which prohibits all forms of discrimination by commercial air carriers. There is a private right of action under

§ 1374, *see Nader v. Allegheny Airlines, Inc.*, 512 F.2d 527 (D.C.Cir. 1975), *rev'd on other grounds* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), and plaintiffs clearly assert that Pan American discriminated against Michael Angel in its interpretation of its own tariffs and procedures and, alternatively, that those tariffs and procedures themselves are discriminatory.

It having been determined that principles of primary jurisdiction and exhaustion of remedies do not bar the plaintiffs from proceeding in this Court, the query remains whether there are material factual questions in dispute and, if not, whether the defendant is entitled to summary judgment as a matter of law. The plaintiffs' case states three independent causes of action: a violation of section 504 of the Vocational Rehabilitation Act, predicated on Pan American's alleged discrimination against a handicapped individual; misrepresentation and gross negligence, based on the airline's statements to plaintiffs (directly to Carolyn Angel and through her, to Michael Angel) that it would transport Michael Angel without an attendant and that it would contact Carolyn Angel concerning Michael's arrival from Germany; and a claim seeking a declaration that under Pan American's tariffs, the airline must permit Michael Angel to board without his needing an attendant.

 Section 504 of the Vocational Rehabilitation Act stated in the summer of 1977:

> No otherwise qualified handicapped individual in the United States ... shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving federal financial assistance.

29 U.S.C. § 794 (1976). The defendant maintains that Pan American has not received direct federal financial assistance since November 1, 1956, when it received a mail related subsidy from the government. Plaintiffs suggest that the airline is the beneficiary of numerous indirect subsidies, sufficient to constitute federal financial assistance and trigger the Act's prohibition against exclusion of handicapped individu-

als. They point to air traffic controllers provided by the FAA, to airports constructed with federal funds, and to other technical assistance.

In *Gottfried v. Federal Communications Commission*, 655 F.2d 297 (D.C.Cir. 1981), the Court of Appeals held that commercial broadcast stations were not considered recipients of federal financial assistance merely by virtue of the licenses granted to them by the federal government. The significance of the *Gottfried* decision to this case is found in its cogent analysis of Section 504. Judge Wright, writing for the Court, discussed Title VI of the Civil Rights Act of 1964, upon which Section 504 was modeled expressly. Referring to the legislative history underlying Title VI, the Court cited a Department of Justice study completed at the request of Congress listing programs that would qualify as recipients of federal financial assistance. *See* 110 Cong.Rec. 13380–13382 (daily ed. June 10, 1964). The only listing for the CAB relates to direct payments to the airlines, which Pan American has not received since 1956. Otherwise, the airlines are not mentioned.

Although the Justice Department did consider that airports would be regarded as recipients of federal financial assistance, this does not vitiate the conclusion that airlines are not within the ambit of Section 504. Subsidies to airports, to be sure, subject those locales to the broad proscription of Section 504, but this does not translate into binding law upon the users of the airports, whether they be commercial airlines or individual passengers. To hold that commercial airlines fall within Section 504 merely because of assistance provided to airports would expand improperly the accepted proposition that Section 504 is limited to direct recipients of federal funds. *See Simpson v. Reynolds Metal Co., Inc.*, 629 F.2d 1226 (7th Cir. 1980); *Rogers v. Frito-Lay, Inc.*, 433 F.Supp. 200 (N.D.Tex.1977), *aff'd* 611 F.2d 1074 (5th Cir.), *cert. denied*, 449 U.S. 889, 101 S.Ct. 246, 66 L.Ed.2d 115 (1980).

The question now arises as to whether plaintiffs should be permitted to proceed

claiming that Pan American committed tortious acts with improper application of its tariff. Let us examine those procedures in effect on July 16, 1977, when Michael Angel was denied boarding at Frankfurt, Germany. The inquiry is framed by a reading of a rule, effective May 16, 1977, issued by the FAA, providing that

[n]o certificate holder may refuse transportation to a passenger on the basis that, because the passenger may need the assistance of another passenger to move expeditiously to an exit in the event of an emergency, his transportation would or might be inimical to safety of flight unless—

(1) The certificate holder has established procedures (including reasonable notice requirements) for the carriage of passengers who may need the assistance of another person to move expeditiously to an exit in the event of an emergency; and

(2) At least one of the following conditions exist:

(i) The passenger fails to comply with the notice requirements in the certificate holder's procedures

(ii) The passenger cannot be carried in accordance with the certificate holder's procedures.

*See* 49 C.F.R. § 121.586, 42 Fed.Reg. 18392 (April 7, 1977). The CAB has further noted:

As we read Section 1111 of Federal Aviation Act [49 U.S.C. § 1511] and the FAA's rulemaking thereunder, no disabled or handicapped person can be denied transportation on the grounds of disability other than when done in accordance with rules that have been filed with and accepted by the FAA.

42 Fed.Reg. at 43830 (Aug. 31, 1977). The Court must therefore look to the procedures in effect in July 1977 governing Pan American's carriage of physically handicapped persons; the defendant must demonstrate either that the plaintiff failed to comply with any notice requirements or that the airline could not transport plaintiff without violating its own procedures.

The following Pan American tariff provision PR–3, CAB No. 55, Rule No. 15, was in effect in June and July 1977 when the alleged incidents occurred:

### Rule No. 15: *LIMITATIONS OF CARRIAGE*

*I. REFUSAL, CANCELLATION OR REMOVAL*

A. Carrier will refuse to carry, cancel the reserved space of, or remove enroute any passenger when:

1. Such action is necessary for reasons of safety;

2. such action is necessary to prevent violation of any applicable laws, regulations, or orders of any state or country to be flown from, into or over;

3. the conduct, age or mental or physical condition of the passenger is such as to

a. require special assistance of carrier; or

b. cause discomfort or make himself objectionable to other passengers; or

c. involve any hazard or risk to himself or to other persons or to property.

. . . .

*II. RECOURSE OF PASSENGERS:* Subject to the provisions of Rule 37—Denied Boarding Compensation, the sole recourse of any person so refused carriage or removed enroute for any reason specified in the foregoing paragraph shall be recovery of the refund value of the unused portion of his ticket as hereinafter provided in Rule 18.

Def. Motion, Ex. E.

It should also be noted that procedures were filed with the FAA concerning the carriage of handicapped persons by Pan American. Relevant parts of these procedures, found at Section 200, Bulletin 209 (July 1, 1977), shed light on a proper interpretation of Rule No. 15.

Each person unable to move to an exit under his own power or to attend to his personal requirements must be accompanied by an attendant capable of carrying the incapacitated person. (Procedures at 1).

. . . .

Incapacitated passengers would include, but not be limited to, passengers who are both blind and deaf, stretcher cases and non-ambulatory wheelchair cases. (*Id.*) The bulletin limits, according to the type of aircraft in use, the number of persons who will be carried who need assistance to make their way to an exit in an emergency, and requires that such passengers give Pan American 24 hours notice in advance of their intended departure time. *Id.*[3]

Although presenting a complex maze of regulations, this tariff and procedure, as applied to Michael Angel, finds a simple analysis. Plaintiff demonstrates, and defendant accepts for purposes of this motion, that he can move under his own power by crawling and therefore does not need assistance to evacuate an aircraft. Accordingly, under Pan American's own reservations procedure, he need not be accompanied by an attendant as he is both "[a]ble to move to an exit under his own power [and he can] attend to his personal requirements." Implicitly, the reservations procedure defines incapacitated individuals as those who cannot move under their own power because it joins "incapacitated person" in the same phrase as "each person unable to move to an exit under his own power." Moreover, it refers to "non-ambulatory wheelchair cases," who present different problems than "ambulatory wheelchair cases." This interpretation finds support from an Advisory Circular issued by the FAA on March 25, 1977, three months prior to plaintiff's trip to Europe. This statement categorizes handicapped passengers as follows:

a. Ambulatory. A passenger who is able to board the aircraft unassisted and who is able to move about the aircraft unassisted. This includes the blind, deaf, mentally retarded, etc.

b. Nonambulatory. A passenger who is not able to board and deplane from an aircraft unassisted or who is not able to move about the aircraft unassisted.

Advisory Circular No. 120–32, App. B to Plaintiff's Supplemental Memorandum Concerning Pan American's Tariffs and Procedures. Because the facts demonstrate that the plaintiff is capable of entering and exiting an aircraft as well as attending to his personal needs aboard, all under his own power, under the terms of Pan American's reservations' procedure, the plaintiff should have been permitted to board the aircraft in Frankfurt despite the fact that he was travelling alone. Then was he properly denied passage by virtue of the tariff in existence at that time?

■ Since that tariff provided that a passenger can be excluded if necessary to protect the safety of himself or others, defendant seeks at this stage of the litigation to invoke this "if necessary" discretionary mechanism to justify the refusal of passage to plaintiff. This rationale, however, is not borne out by the facts presented by the plaintiff and assumed by the defendant for

---

**3.** In November, 1977, Pan American incorporated some of these procedures in an amended tariff adding to Rule No. 15 the following:

RULE NO. 15: *LIMITATIONS OF CARRIAGE*

. . . .

A. (Applicable to Pan American only)—Carrier will accept incapacitated or handicapped passengers for carriage on the following basis. (For the purpose of this rule, incapacitated or handicapped passengers are passengers who would require assistance to evacuate the aircraft during an emergency):
1. the passenger is accompanied by an attendant who will be responsible for caring for him enroute, and
2. with the care of such attendant, will not require unreasonable attention or assistance from employees of the carrier.

*EXCEPTION*: Provided advance arrangements are made with the carrier not less than 24 hours prior to the intended departure of the passenger, carrier will accept for transportation on any one flight the following maximum number of incapacitated or handicapped passengers who are not escorted by an able bodied attendant for each such passenger throughout the flight. Provided further, passengers on stretchers or passengers requiring medical attention in flight will not be accepted unless accompanied by an attendant.

| AIRCRAFT TYPE | MAXIMUM NUMBER OF INCAPACITATED/HANDICAPPED PASSENGERS PER FLIGHT |
|---|---|
| B–747 | 5 |
| B–747–SP | 4 |
| B–707 | 2 |
| B–727 | 1 |

purposes of this motion. The plaintiff was told in Germany by Pan American's agent-employees (including a supervisor) that he was denied boarding because he was travelling alone and because he could not walk. Nothing in the record indicates that the agents in Frankfurt even attempted to invoke the discretionary aspect of tariff No. 15 or refer to any passenger's safety aboard the aircraft. The matter as presently viewed in this motion's posture demonstrates no particular safety danger posed by plaintiff; in fact, he was examined by a German doctor at the airport, who issued a certificate in German that he was perfectly capable of flying alone. Angel offered to demonstrate his crawling ability to the agent, who refused to observe him. In an analogous case, the Second Circuit has recently held that whether an airline properly refuses to permit an individual to board

> rests upon the facts and circumstances of the case as known to the airline at the time it formed its opinion and made its decision and whether or not the opinion and decision were rational and reasonable and not capricious or arbitrary in the light of those facts and circumstances.

*Williams v. Trans World Airlines*, 509 F.2d 942, 948 (2d Cir. 1975). Based upon the facts known to the Frankfurt agents at the time Michael Angel was denied boarding, assumed true by the defendant, the agent acted irrationally and unreasonably, misinterpreting the Pan American tariff and procedures.

The conclusion that plaintiff did not present a safety risk is supported by the study completed by the FAA Civil Aeromedical Institute ("CAMI"), which in recognition that individuals who could not walk did not, automatically, pose a safety risk, concluded "that many non-ambulatory handicapped persons reached the exit with remarkable speed using seat backs for support or in the sitting position, pulling themselves backwards with their arms." 42 Fed. Reg. 18394 (1977).

Were the facts to appear as presented by the plaintiff and as assumed by the defendant, the Court would have no hesitancy in awarding declaratory relief to Michael An-gel concerning the application to him of the tariff and reservations procedure in effect in 1977. The defendant, however, erred in characterizing its motion as one for summary judgment, because it neither contended that no material facts were in dispute nor attached the appropriate affidavits and other material pursuant to Fed.R.Civ.P. 56. Instead, Pan American assumed that the plaintiffs' statement of the facts were true, contending that as a matter of law, no claim was presented. Pan American's motion is therefore one for failure to state a claim under Fed.R.Civ.P. 12(b)(6), *see* 2A *Moore's Federal Practice* ¶ 12.08, rather than one for summary judgment. Because no party has developed a factual record nor satisfied the minimal requirements for a summary judgment ruling, the Court must permit discovery and the trial to go forward for ascertainment of the precise factual events leading up to the denial of boarding.

Remaining therefore is the question whether plaintiffs may proceed to trial on their tort claims for misrepresentation and for gross negligence. The defendant seeks judgment as a matter of law on two separate bases: that the claim for misrepresentation ignores the constructive notice provided by the tariffs, and that permitting the plaintiffs to proceed in an action for damages would frustrate the general regulatory scheme over the nation's airlines.

In *Goodman v. National Airlines, Inc.*, 201 A.2d 877 (D.C.1964), the District of Columbia Court of Appeals ruled that there can be no misrepresentation regarding a provision of filed tariffs since the parties are bound by the terms and have constructive notice thereof. Defendant argues that because Rule No. 15 was on file and available for public inspection, the plaintiffs had notice of Pan American's procedures concerning transportation of the handicapped. Plaintiffs reject the applicability of *Goodman* in light of *Nader v. Allegheny Airlines, Inc.*, 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976), where the Supreme Court of the United States permitted the plaintiff, after being denied boarding despite a confirmed seat, to litigate a claim for common law

misrepresentation notwithstanding an administrative procedure to adjudicate deceptive practices allegedly committed by the airline. Nonetheless, in *Nader* that plaintiff alleged the total absence of disclosure concerning the likelihood that his confirmed ticket might not be honored; no tariff provision was at issue. Despite the seeming unfairness of rigorously binding passengers to the terms of tariffs on file with the CAB, the law in the District of Columbia is clear after *Goodman* that Ms. Angel was on constructive notice as to the tariffs then filed. Moreover, in light of the Court's ruling today, based on the existing record of facts assumed for purpose of the defendant's motion, that the Frankfurt agent improperly denied boarding to Angel, it would be anomalous to hold Pan American liable for the statement by its Washington, D.C. agents who properly interpreted the tariff.

May the plaintiffs, however, proceed on a negligence basis against Pan American for its conduct during the entire incident? In *Nader*, the Supreme Court held that common law remedies which do not frustrate statutory enforcement schemes may proceed to fruition. In that dispute, the defendant claimed that the CAB should have had an opportunity to determine whether, under Section 411 of the Federal Aviation Act, it engaged in a deceptive or unfair practice. Plaintiff contended in *Nader* that the airline's failure to disclose that he might be denied boarding because of a surplus of reservations constituted fraudulent misrepresentation. While the Court in *Nader* rejected the analogy to rate disputes, where conflicting determinations from the CAB and a court might work hardship on an airline, it found no irreconcilable conflict between the common law claim of fraudulent misrepresentation and the statutory mechanism.

This case presents a similar circumstance in that the claim for negligence does not demonstrate jeopardy to any specific part of federal aviation regulations. Plaintiffs will be granted the right to seek to persuade a jury that Pan American acted negligently, in *inter alia*, asserting two conflicting interpretations of the same tariff/procedures and in advising Carolyn Angel, for transmission to Michael Angel, that her son could travel unescorted and that she would be told when her son would arrive when allegedly no notice was given.

On June 6, 1979, the CAB published in the Federal Register a Notice of Proposed Rulemaking: Nondiscrimination on the Basis of Handicap. Regulations were set out there, open to comment, designed at ending discrimination against the handicapped in air transportation. *See* 44 Fed.Reg. 32401 (1979). When the instant motion was argued before the Court, it appeared then and for a considerable time thereafter, prompting stay of this decision, that final CAB rules were imminent. That expectation has not been realized. It should also be noted that on July 13, 1981, the CAB published another Notice of Proposed Rulemaking, seeking elimination of passenger rules tariffs in interstate and overseas air transportation. *See* 46 Fed.Reg. 35926 (July 13, 1981). In this notice, the Board expressly refers to its proposed rules concerning the handicapped, and indicates that the removal of tariff provisions will have no effect on the final rules to be implemented shortly.

Federal law appropriately recognizes the right of the physically handicapped to be free from discrimination. Our society has advanced the rights of the handicapped demonstrably; yet, as those individuals who seek vindication of their rights are all too aware, our nation has not completed the process of ensuring equality. It is hoped that that day is to come soon.

It is this 30th day of July, 1981,

ORDERED that the defendant's motion for summary judgment be and it hereby is denied, and it is

FURTHER ORDERED that discovery terminates in sixty days, with trial to commence October 13, 1981 at 10:00 a. m.