DISABLED IN ACTION, an Organization of Disabled Persons, and Robert Ardinger, Individually and as Co-Founder, Disabled in Action, and Tom Turner, and Mac Arthur Crawford, Appellants,

v.

MAYOR & CITY COUNCIL OF BALTIMORE, a Municipal Corporation, and Baltimore Baseball Club, Inc., Appellees.

DISABLED IN ACTION, an Organization of Disabled Persons, and Robert Ardinger, Individually and as Co-Founder, Disabled in Action, and Tom Turner, and Mac Arthur Crawford, Appellees,

v.

MAYOR & CITY COUNCIL OF BALTIMORE, a Municipal Corporation, Appellee,

and

Baltimore Baseball Club, Inc., Appellant.

Nos. 81–1846, 81–1896.

United States Court of Appeals, Fourth Circuit.

Argued March 30, 1982.

Decided Aug. 9, 1982.

C. Christopher Brown, Baltimore, Md., for appellants/cross-appellees.

Donald N. Rothman, Jerrold A. Thrope, Baltimore, Md. (Robert W. Katz, Gordon, Feinblatt, Rothman, Hoffberger & Holland-er, Baltimore, Md., on brief), William R. Phelan, Jr., Asst. City Sol., Baltimore, Md. (Benjamin L. Brown, City Sol., Richard Ja-cobsen, Chief Sol., Baltimore, Md., on brief), for appellees/cross-appellants.

Before WINTER, Chief Judge, BRYAN, Senior Circuit Judge, and HALL, Circuit Judge.

HARRISON L. WINTER, Chief Judge:

The district court awarded plaintiffs counsel fees against the City of Baltimore (the City) and the Baltimore Baseball Club, Inc. (the Club) under § 120 of the Rehabili-tation, Comprehensive Services, and Devel-opmental Disabilities Amendments of 1978, 29 U.S.C. § 794a(b) (Supp. II 1978), after the parties settled their controversy. Plain-tiffs appeal, contending that the award was inadequate in amount. The Club also ap-peals, contending that it is not liable for counsel fees pursuant to the Act.

We reverse the award against the Club and vacate the award against the City, remanding the case for a new determination of the amount of fees which the City shall be required to pay.

I.

Plaintiffs are certain disabled individuals and an organization which promotes the interests of disabled persons. They sued the City and the Club, alleging that Baltimore's Memorial Stadium was illegally inaccessible to disabled persons. The Club, which fields the Baltimore Orioles baseball team, leases the stadium during the baseball season, but it is not the exclusive lessee.[1] The object of the suit was to obtain declaratory and injunctive relief requiring defendants to provide facilities for disabled spectators equal to and integrated with facilities for persons not disabled. Upon filing suit, plaintiffs sought but were denied a temporary restraining order. Plaintiffs also filed a separate complaint with the Maryland Commission on Human Relations.

After the temporary restraining order was denied, the court action lay dormant, except for formal pleadings, while the parties pursued the matter before the Commission. Ultimately the dispute was settled when defendants agreed to take certain corrective actions to accommodate disabled patrons and plaintiffs waived their right to litigate their claims further.

Plaintiffs then moved to dismiss the court action except for a motion for an award of attorney's fees. Although plaintiffs requested fees of $24,321, the district court awarded only $6,000. There was no dispute before the district court either as to the number of hours expended by plaintiffs' attorneys in the overall settlement of the dispute or the reasonableness of the rate of compensation per hour for the time expended. The district court, however, was of the view that counsel should not be compensated for forty-eight hours of work expended in the unsuccessful effort to obtain a tem-

porary restraining order and that the time spent by plaintiffs' attorneys on the issue of attorney's fees and other matters was excessive, unnecessary and unreasonable. It specifically rejected a claim that plaintiffs' lawyers were entitled to a twenty-percent bonus over their usual rates to reward their skill in handling the case and the risk involved in taking a case of this type on a contingent basis.

We will state other facts as they relate to particular contentions.

II.

Plaintiffs' suit was brought pursuant to § 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 974 (Supp. II 1978). That section provides: "No otherwise qualified handicapped individual in the United States . . . shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal financial assistance . . . ." Plaintiff's claim for attorney's fees is predicated on 29 U.S.C. § 794a(b) (Supp. II 1978), which reads: "In any action or proceeding to enforce or charge a violation of a provision of this subchapter, the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs."

In light of the contentions of the parties, we must address two threshold questions before considering the amount of the fee award. First, does the Club's use of the stadium for professional baseball games constitute a program or an activity receiving federal financial assistance within the meaning of § 794, so that an award of fees under § 794a(b) against the Club is authorized in a proper case? Second, were plaintiffs prevailing parties within the meaning of § 794a(b), so that an award of fees against the City or the Club is proper in this case? We address these issues seriatim.

---

1. When the Orioles are away from home, the City rents the stadium to others for events other than professional baseball games. Dur-

ing the football season, the stadium is used by the Baltimore Football Club, Inc.

## A. The Club.

The City received a $300,000 grant in 1977 from the Federal Economic Development Administration for improvement of the stadium's elevators. The district court concluded that, since the Club was an indirect beneficiary of this assistance, its use of the stadium as a nonexclusive lessee is an "activity receiving Federal financial assistance." In arriving at this conclusion, the district court relied on a regulation defining a "recipient" of federal financial assistance as "any person to which Federal financial assistance is extended directly or through another recipient including any successor, assignee, or transferee of a recipient, but excluding the ultimate beneficiary of the assistance." 45 C.F.R. § 84.3(f) (1981). It was the district court's view that, although the City was the direct recipient of the grant, the Club, as the major tenant of the stadium, was "the greatest and most immediate beneficiary of federal aid."

The problem of distinguishing an indirect recipient of federal assistance from a nonrecipient for purposes of the Rehabilitation Act arose in the recent decision of *Angel v. Pan American World Airways*, 519 F.Supp. 1173 (D.D.C.1981), which bears a significant factual analogy to the instant case. The plaintiff in *Angel* sought damages and injunctive relief against an airline which had refused to transport him because he suffered from cerebral palsy and was not accompanied by an attendant. Plaintiff asserted that the airline was subject to the Rehabilitation Act since it was the indirect beneficiary of various forms of federal financial assistance to airports, such as construction grants and the payment of air controllers' salaries. Unwilling to extend the statute that far, the court held: "Subsidies to airports, to be sure, subject those locales to the broad proscription of Section 504, but this does not translate into binding law upon the users of the airports, whether they be commercial airlines or individual passengers." *Id.* at 1178.

Plainly, a recipient of federal assistance cannot escape its obligations under the Rehabilitation Act simply by funneling such assistance through an intermediary. *See Bob Jones University v. Johnson*, 396 F.Supp. 597, 602–03 (D.S.C.1974), *aff'd mem.*, 529 F.2d 514 (4 Cir. 1975). *Angel* suggests, however, that one does not become subject to the Rehabilitation Act merely by enjoying indirectly the benefits of federal assistance to another. We think that distinction is sound and fully applicable here.

If the Club had purchased the stadium outright from the City, it might well be subject to the Rehabilitation Act as a "transferee" of federally funded improvements. *See* 45 C.F.R. § 84.3(f) (1981). In fact, however, the Club possesses only a nonexclusive leasehold. The lease gives the Club a right of consultation respecting improvements to be made to the stadium, but it expressly reserves to the City the right of "final decision as to the expenditure of funds" for such improvements. Even if the Club, in practice, wields a veto over stadium improvements, it would have been legally powerless to make the extensive physical alterations demanded by plaintiffs if the City had chosen to resist such demands.[2] Thus, although the Club may be, in the words of the district court, the "greatest and most immediate beneficiary" of federally funded improvements in the stadium, it is the City, as lessor, which retains paramount control over and responsibility for the premises.

At the very least, it is plain that the City is no mere conduit of federal assistance to the Club. Here, as in *Angel*, the benefits of federal assistance have accrued both to the direct recipient (the airport, the City) and to another entity (the airline, the Club) which shares in those benefits by virtue of business dealings with the direct recipient. If the Rehabilitation Act extends to such indirect beneficiaries of federal largesse, consistency would demand that it apply to every customer of every enterprise subsi-

---

**2.** In *Chastang v. Flynn & Emrich Co.,* 541 F.2d 1040 (4 Cir. 1976), we held that a trustee's lack of power unilaterally to change the terms of a pension plan so as to eliminate sex discrimination was a special circumstance precluding a fee award against the trustee. *See id.* at 1045.

885

dized by the federal government. Nothing in the language or legislative history of the Act indicates a congressional intention to reach so far. Furthermore, the antidiscrimination policy of the Act can be fully vindicated as regards Memorial Stadium by holding the City accountable, without stretching the Act to encompass the City's tenants.

We therefore hold that the Club was not a "recipient" of federal funds. From this holding, it follows that the Club may not be held liable for attorney's fees.

## B. The City

In opposing plaintiffs' argument that the amount of attorney's fees which were awarded to them should be increased, the City argues that the award of even $6,000 should be set aside because plaintiffs were not the "sole" or "primary" impetus for the favorable settlement of the lawsuit and hence were not "prevailing" parties within the meaning of § 794a(b).[3]

Under the law of this circuit, a party may be entitled to fees even though he was not solely or primarily responsible for the favorable disposition of a legal controversy. Rather, one may be deemed a prevailing party within the meaning of fee-granting statutes if his "efforts contributed in a significant way" to the winning of benefits or relief from the "factual/legal condition that the fee claimant has sought to change." *Bonnes v. Long*, 599 F.2d 1316, 1319 (4 Cir. 1979).[4] Whether the outcome in any given case is sufficiently favorable to the claimant to justify a fee award is very much a "practical" inquiry. *Id.*

■■■ Under the *Bonnes* standard, the district court had an adequate factual basis for awarding a fee against the City. It found that plaintiffs' lawsuit and administrative litigation were "responsible" for the installation in Memorial Stadium of twenty-four seats and "several" telephones for the handicapped, additional turn-around space for wheelchairs, nonskid surfaces on access ramps, and an information display showing the location of special facilities. The City argues that these improvements were in planning before plaintiffs even threatened

---

**3.** In general, the Rehabilitation Act requires the evenhanded treatment of the handicapped, rather than "affirmative efforts to overcome the disabilities caused by handicaps." *Southeastern Community College v. Davis*, 442 U.S. 397, 410, 99 S.Ct. 2361, 2369, 60 L.Ed.2d 980 (1979). The City argues that plaintiffs may not be treated as prevailing parties, since the relief which they sought in this lawsuit amounted to affirmative action which could not be compelled under the Act.

As the *Davis* Court acknowledged, the line between nondiscrimination and affirmative action is not always clear. The failure to take positive measures facilitating full participation by the handicapped in a program covered by the Act may be unreasonable and discriminatory if such measures would not impose "undue financial and administrative burdens" on the program. *Id.* at 413, 99 S.Ct. at 2370. The City settled plaintiffs' claims without making a record as to the magnitude of the financial burden that the settlement imposed. Thus, we lack the information necessary to decide definitively whether the terms of the settlement were gratuitous or instead could have been imposed as a matter of right. It does not appear, however, that plaintiffs' claims were patently frivolous under the Act. In our view, plaintiffs became entitled to attorney's fees when they won, by way of a settlement, practical relief on colorable claims. *See United Handicapped Federation v. Andre*, 622 F.2d 342, 345–48 (8

Cir. 1980); *Bonnes v. Long*, 599 F.2d 1316, 1319 (4 Cir. 1979); *Nadeau v. Helgemoe*, 581 F.2d 275, 281 (1 Cir. 1978). Our decision in *Smith v. University of North Carolina*, 632 F.2d 316 (4 Cir. 1980), is not to the contrary. There we held only that a party was not entitled to attorney's fees in connection with her successful application for a preliminary injunction, since the trial court ultimately ruled for her adversary on the merits. *See id.* at 346–47.

Alternative grounds for disposing of the discrimination question are also available. The City, unlike the Club, did not appeal the judgment awarding attorney's fees against it. As noted above, the record is inadequate for decision of the discrimination issue on the merits—a situation for which the City is substantially responsible. As to that issue, therefore, we apply the rule that a party's failure to appeal precludes it from challenging an order of the district court. *See* 15 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3904, at 416–18 (1976).

**4.** *Bonnes* dealt with fee awards under 42 U.S.C. § 1988. Because § 1988 closely parallels the fee-granting provision of the Rehabilitation Act as amended, the analytical considerations are the same under both statutes. *See, e.g., United Handicapped Federation v. Andre*, 622 F.2d 342, 345–48 (8 Cir. 1980).

legal action, but the district court accepted this version of the facts only to a limited extent.[5] The court's findings in this regard were not clearly erroneous. Moreover, a party may be deemed to have "prevailed" even when it has not won all of the relief requested. *See Bonnes,* 599 F.2d at 1318. Fees may be awarded even where a party's efforts have merely "served to a limited extent to expedite the planning and achievement gained." *United Handicapped Federation v. Andre,* 622 F.2d 342, 348 (8 Cir. 1980).

Thus we hold that the district court was correct in awarding fees against the City. The only remaining issue is whether the amount of the award was proper.

### III.

■ In rejecting plaintiffs' requested fees of $24,321 and awarding only $6,000, the district court found that the more than 100 hours which counsel expended on the issue of attorney's fees were "unnecessary and unreasonable." Of course the district court had discretion to decline to award fees for time not reasonably needed for research or presentation of a particular issue or issues. *See generally Barber v. Kimbrell's, Inc.,* 577 F.2d 216, 226 (4 Cir.), *cert. denied,* 439 U.S. 934, 99 S.Ct. 329, 58 L.Ed.2d 330 (1978). But we are not unmindful that the law of fee awards under various statutes is evolving, and the outcome of a claim cannot always be predicted with complete accuracy. Moreover, an item of a fee claim may not be refused in its entirety on the grounds that it is excessive. Rather, the court should withhold fees in respect of such an item only to the extent of the excess, while granting a fee to the extent the item reflects time and effort reasonably expended by counsel.

■ The district court also disallowed fees for forty-eight hours which counsel expended in an application for a temporary restraining order. The fact that the application was unsuccessful was the only apparent reason for the disallowance. We realize that fee-granting statutes are not intended to encourage frivolous tactics. *See generally* S.Rep.No.94–1011, 94th Cong., 2d Sess. 6, *reprinted in* [1976] U.S.Code Cong. & Ad. News 5908, 5913. But prevailing parties need not succeed on every point in order to be entitled to full compensation. A contrary rule would do much to discourage innovative and creative representation. *See, e.g., Seigal v. Merrick,* 619 F.2d 160, 165 (2 Cir. 1980).

More significantly, after the district court made its award in the instant case, we decided *Anderson v. Morris,* 658 F.2d 246 (4 Cir. 1981). There we gave these instructions regarding the calculation of fees:

> [The district court should] first ascertain the nature and extent of the services supplied by the attorney from a statement showing the number of hours worked and an explanation of how these hours were spent. The court should next determine the customary hourly rate of compensation. . . . The court should then multiply the number of hours reasonably expended by the customary hourly rate to determine an initial amount for the fee award. Finally, the court should adjust the fee on the basis of other factors, briefly explaining how they affected the award.

*Id.* at 249.

■ Because the district court decided this case before *Anderson* was announced, it understandably failed to employ the explicit and methodical approach which that case requires. Without making specific findings as to how much time plaintiffs' counsel should reasonably have devoted to the case, the district court simply settled on a fee which seemed to it fair in the circumstances. We must therefore vacate the fee award and remand this aspect of the case

---

**5.** The district court held that plaintiffs' efforts were not a factor in securing some of the improvements agreed to by defendants: namely, forty-one additional seats, special parking facilities, special training for stadium attendants, and the planning of feasibility studies for further changes.

It should be noted that none of the parties contends on appeal that factual issues precluded summary disposition of plaintiffs' fee request.

for recalculation of the fee by the method prescribed in *Anderson*, with instructions that particular items claimed may not be disallowed in their entirety solely because plaintiffs were not successful on every issue or because their request, taken as a whole, is excessive.[6] In recalculating the fee, the district court should also include an award for the services of plaintiffs' counsel in this appeal and in further proceedings before the district court.

No. 81–1846. VACATED AND REMANDED.

No. 81–1896. REVERSED.

---

**6.** Nothing we have said undermines the district court's ruling that no bonus should be awarded in this case. The district court specifically found that the performance of plaintiffs' counsel, though adequate, was not so outstanding as to justify a twenty-percent bonus over their usual rates of compensation. We have no basis for overturning that finding.