ILLINOIS CENTRAL RAILROAD COMPANY, A CORPORATION, RESPONDENT,
v. A. B. FRIEDMAN & COMPANY, INC., A CORPORATION, APPELLANT.
—161 S. W. (2d) 440.

St. Louis Court of Appeals. Opinion filed May 5, 1942.

*Nathan Cherrick* and *J. E. Sigoloff* for defendant.

*Watts & Gentry* for respondent.

948

McCULLEN, J.—This suit was brought in a justice of the peace court in the City of St. Louis, Missouri, by plaintiff to recover from defendant the sum of $187.82 for freight charges on a shipment of a carload of lettuce. There was a judgment for plaintiff in the justice of the peace court and defendant appealed to the Circuit Court of the City of St. Louis where a jury was waived and the case tried on an agreed statement of facts, resulting in a judgment in favor of plaintiff against defendant for the amount sued for. Defendant duly appealed.

Plaintiff's petition alleged that defendant was the consignee of a shipment originating in Alhambra, Arizona, on April 10, 1937, in car No. SFRD-17671, containing one carload of lettuce and consigned to the consignee, defendant herein; that thereafter defendant reconsigned said car to Chicago, Illinois, and to Memphis, Tennessee, and New Orleans, Louisiana; that said car was delivered on the lines of plaintiff railroad company at New Orleans, La., at the direction of the consignee on May 1, 1937; and that said consignee was duly notified; that said consignee allowed demurrage to accumulate upon said car, and on May 5th ordered the car sold for freight charges; that the total freight charges on said shipment amounted to $322.82; that the proceeds of the sale of the contents of the car amounted to $135, leaving a balance due of $187.82 for which amount plaintiff prayed judgment.

The record does not show any answer filed by defendant either in the justice court or the circuit court. The agreed statement of facts, upon which the case was tried before the court sitting as a jury, is as follows:

(1) That plaintiff is a corporation duly organized under the laws of the State of Illinois and duly authorized to do business in the State of Missouri, and was at all times engaged in the transportation

of passengers and freight for hire; (2) that on April 10, 1937, American Fruit Growers, Inc., as consignor, in accordance with tariffs lawfully on file with the Interstate Commerce Commission, shipped one carload of lettuce from Alhambra, Arizona, in car SFRD No. 17671 over the lines of the Atchison, Topeka & Santa Fe Railroad, and said shipment was consigned to American Fruit Growers, Inc., advise A. B. Friedman Co. at St. Louis, Missouri; that said shipment consisted of 318 crates of lettuce weighing 24,168 pounds; (3) that on April 14, 1937, upon due instruction from the consignor the consignee was changed to A. B. Friedman Co. and said car reached St. Louis, Missouri, over the lines of the Wabash Railroad; (4) that thereafter said carload shipment of lettuce was duly reconsigned and diverted by A. B. Friedman Co., the defendant herein, from St. Louis, Missouri, to Chicago, Illinois, and was transported between those points over the lines of the Wabash Railroad; that said shipment was further reconsigned and diverted from Chicago, Illinois, to Memphis, Tenn., and shipment between those points was over the lines of the Chicago & Eastern Illinois from Chicago, Illinois, to East St. Louis, Illinois, and over the lines of the Illinois Central Railroad from East St. Louis, Illinois, to Memphis, Tenn.; that thereafter said shipment was further reconsigned and diverted from Memphis, Tenn., to New Orleans, La., and was transported between those two points over the lines of the Illinois Central Railroad, and that said car was delivered by Illinois Central Railroad, plaintiff herein, at New Orleans, La., on May 1, 1937; (5) that on May 8, 1937, plaintiff sold said carload of lettuce for the sum of $135.00; (6) that the proper freight charges for said shipment, including demurrage charges, amounted to $322.82, and after credit was given for proceeds of sale of said carload of lettuce, there is a balance due and owing from said freight shipment amounting to $187.82; (7) that said shipment and all reconsignments and diversions and all services rendered thereto were and rendered in accordance with tariffs lawfully on file with the Interstate Commerce Commission at the time of the initial shipment from Alhambra, Arizona; (8) that all services rendered to the shipment were by common carriers, by railroad in interstate commerce.

Plaintiff introduced in evidence its Exhibit 1, being a telegram dated New Orleans, La., May 3, 1937, addressed to defendant, stating "Must have disposition Santa Fe Seventeen Six Seven One yourself here advise quick," signed by an agent of plaintiff railroad company. Exhibit 2 of plaintiff, also introduced in evidence, is dated New Orleans, La., May 4, 1937, addressed to defendant company at St. Louis, Missouri, and is as follows: "Santa Fe seventeen six seven one still on hand unclaimed We must have disposition advise quick," signed by the agent of plaintiff railroad company.

Defendant introduced in evidence as its Exhibit A the original bill of lading issued by the Atchison, Topeka & Santa Fe Railway Com-

pany at Alhambra, Arizona, dated 4-10-1937, showing the shipment therein to be as set forth in the agreed statement of facts. Defendant also introduced in evidence its Exhibit B, a letter written on the stationery of the accounting department of plaintiff railroad company, dated May 10, 1939, addressed to defendant company, St. Louis, Missouri, informing defendant that the car of lettuce shipped April 10, 1937, consigned to defendant at St. Louis, Missouri, which the letter stated defendant diverted several times before the car arrived at New Orleans, La., having been held at St. Louis, Chicago and Memphis, on arrival at destination was refused by the consignee and sold by the carriers for account of who it may concern, and that $135.00 was realized from the sale. The letter stated: ''Investigation discloses that the carriers are outstanding the following charges,'' following which the charges totaling $322.82 were itemized, and after showing the deduction of $135.00, the proceeds of the sale, left a balance due of $187.82. The letter then stated that, as there was no delay or damage on the shipment chargeable to the carrier, it was necessary for the carrier to collect the outstanding charges, and requested defendant to send its draft in the amount named.

It is contended by defendant that its demurrers to the evidence were erroneously overruled at the close of plaintiff's case and at the close of the entire case because, as it asserts, plaintiff failed to plead or prove either an express or an implied contract between itself and defendant obligating defendant to pay the freight charges to plaintiff; that the only express contract in the case is the bill of lading issued by the original carrier; that such contract governed the entire shipment, and that the Santa Fe Railroad Company, by virtue of its bill of lading, as original carrier was entitled to collect all the charges which accrued during the entire transportation; that plaintiff, as a carrier subsequent, acted merely as the original carrier's agent in the transportation of the shipment and had no rights in the contract.

Defendant cites a number of cases in support of its argument that only the Santa Fe Railroad Company, the original carrier, was entitled to bring a suit for the freight charges; that the plaintiff acted merely as agent for the original carrier; that there was no proof or allegation that the rights of the original carrier had been assigned to plaintiff; and that plaintiff being only an agent had no right to bring this action in its own name.

It would unnecessarily prolong this opinion to discuss in detail the cases cited by defendant and would serve no useful purpose. We think it is sufficient to say that said cases do undoubtedly hold as defendant asserts they do, but we think they are not applicable to the case at bar. For instance, Missouri, K. & T. R. R. Co. v. Ward, 244 U. S. 383, 37 Sup. Ct. Rep. 617, 61 L. Ed. 1213, cited and strongly relied on by defendant, holds that the several carriers in an interstate shipment must be treated not as independent contracting parties

but as one system, and that the connecting lines become in effect mere agents whose duty it is to forward the goods under the terms of the contract made by their principal, the initial carrier. However, defendant fails to note that said case was one in which the shipper sued a railroad carrier for damage to the shipment, whereas this is a case wherein the railroad is suing a consignee for its freight charges. The decision in the cited case was based upon the Act of June 29, 1906, c. 3591, 34 Stat. 584 (U. S. Comp. Stat. Supp., 1911, p. 1288), the amendment to the twentieth section of the Interstate Commerce Act, known as the Carmack Amendment. [See 49 U. S. C. A., sec. 20, pars. (11), (12).] The purpose of the Carmack Amendment, as stated in the very case cited by defendant, "was to *relieve shippers* of the difficult, and often impossible, task of determining on which of the several connecting lines the damage occurred." This was "for the purpose of fixing the liability." [Mo. K. & T. R. R. Co. v. Ward, 244 U. S. 383, 61 L. Ed. 1213, 37 Sup. Ct. Rep. 617, 619.] (Emphasis ours.)

Defendant has cited no case and we have found none which holds that, because under the Carmack Amendment to the Interstate Commerce Act a shipper or owner may hold the original carrier for damage to or loss of his shipment and treat subsequent carriers merely as agents of the original carrier, it is necessary for a delivering carrier to get an assignment from the original carrier of the latter's right of action for freight charges before such delivering carrier may sue to recover freight charges under a state of facts such as we have in the case at bar. In other words, we find nothing in the cases cited by defendant to warrant the view that a delivering carrier of an interstate shipment may not directly sue a party who, as did defendant herein, exercised dominion over an interstate shipment by diverting or reconsigning it, whereas there are numerous cases holding that such a suit may be brought by a delivering carrier and sustained.

This being an interstate railway shipment, the rights and liabilities of the parties thereto depend upon and must be determined in the light of Federal legislation, the bill of lading issued, and common-law rules as accepted and applied in Federal tribunals. [Cincinnati N. O. & T. P. Ry. Co. v. Rankin, 36 Sup. Ct. 555, 241 U. S. 319, 60 L. Ed. 1022.]

Section 7 of the uniform domestic straight bill of lading involved herein provides:

"The owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; . . ."

The bill of lading further provides that, where the carrier has been instructed by the shipper or consignor to deliver the property to a consignee other than the shipper or consignor, such consignee shall not be legally liable for the transportation charges in respect to the transportation of said property (beyond those billed against

him at the time of delivery, for which he is otherwise liable) which may be found to be due after the property has been delivered to him, "if the consignee (a) is an agent only and has no beneficial title in said property, and (b) prior to delivery of said property has notified the delivering carrier in writing of the fact of such agency and absence of beneficial title, and, in the case of a shipment reconsigned or diverted to a point other than that specified in the original bill of lading, has also notified the delivering carrier in writing of the name and address of the beneficial owner of said property; and, in such cases the shipper or consignor, or, in the case of a shipment so reconsigned or diverted, the beneficial owner, shall be liable for such additional charges."

The general rule with respect to the legal status of one who exercises dominion over goods being shipped in interstate commerce is stated in 9 Am. Jur., "Carriers," sec. 629, p. 797, as follows:

"Undoubtedly, the decisions are agreed that one who receives *or exercises dominion over goods by ordering a reconsignment,* in the absence of some further element of fact which clearly destroys the presumption of ownership or contract thereby established, is responsible for freight charges accruing up to the time of such receipt or reconsignment order." (Italics ours.)

The same authority in the same volume, title, section and page numbers as above, further states:

"It also seems equally well settled that one who directs a reconsignment of goods shipped to him, thereby assuming control over them, is in the position of principal or original consignor, in so far as the railroad company is concerned, and is responsible for freight charges accruing subsequent to the issuance of the order, in the absence of a clear indication of agency, information unequivocally imparted to the carrier as to the true situation of the parties. . . ."

In 13 C. J. S., "Carriers," sec. 316, p. 745, it is said:

"Also, an obligation to pay the charges may generally be implied or incurred by reason of the fact that a person accepts or receives the shipment from the carrier, *or otherwise exercises dominion over it while in the carrier's hands, as by directing that it be reshipped or reconsigned.*" (Italics ours.)

Pennsylvania R. Co. v. Lord & Spencer, 3 N. E. (2d) 231, a case decided by the Supreme Judicial Court of Massachusetts, involved facts similar to those in the case at bar. The railroad company brought suit to recover for freight charges due on a shipment of lettuce made by Engebretson Grape Co. from California to Toronto, Canada, consigned to one Charles Cira. About ten days after the shipment was made, one M. L. Catania telephoned the defendant in Boston, Mass., advising he had a carload of lettuce in Toronto, and asked if defendant would handle it for his account. Defendant agreed to the proposed reconsignment on conditions that the quality

of the lettuce was good and that it, defendant, was to act as commission agent only. Pursuant to said conversation, the shipment was then diverted to Boston consigned to defendant, the New York, New Haven & Hartford R. Co., being the delivering carrier. Defendant gave notice to said delivering carrier in Boston that it was agent only and had no beneficial title to the property; that the beneficial owner was M. L. Catania of Toronto, Canada. When the shipment arrived in Boston, defendant, on inspection, refused it and wired Catania to that effect. Catania requested defendant to divert the shipment to George Fava Fruit Co. at Baltimore, Maryland. Defendant thereupon instructed the New York, New Haven & Hartford R. Co. to divert the shipment to Baltimore, and requested said railroad company to reconsign the car to George Fava Fruit Co. at Baltimore via the Pennsylvania Railroad, with "all charges to follow the cars," further advising that the car was forwarded to defendant by M. L. Catania, Toronto, Canada. When the shipment arrived at Baltimore, the Fava Fruit Company refused delivery because of the bad condition of the lettuce, whereupon plaintiff, as the delivering carrier there, sold the lettuce to prevent further deterioration.

The trial court directed a verdict for plaintiff at the close of the evidence. The Supreme Judicial Court, in a carefully considered opinion by its Chief Justice, held that the consignee having directed reconsignment of the shipment refused by it, the reconsignment constituted such an exercise of dominion over the goods as to render the consignee liable for freight charges because the order for reshipment was unequivocal and did not indicate agency notwithstanding that notice to the carrier prior to the arrival of the shipment that consignee was only an agent and had no beneficial title therein had been given. The court, referring to the defendant therein, quoted with approval from a leading case on this subject, namely, New York Cent. R. R. Co. v. Warren Ross Lumber Co., 234 N. Y. 261, 137 N. E. 324, 325, as follows:

"When it wrote the letter directing the delivery without notifying the plaintiff that it was not the owner of the goods, it acted either as consignee or volunteer. We may not assume that its letter was the act of a meddler. We must therefore presume that it wrote as consignee. *It follows that it accepted the goods by an act of ownership when it exercised dominion over them by giving directions for their delivery and the plaintiff was justified in treating it as owner of the goods.*" [Penn. R. Co. v. Lord & Spencer (Mass.), 3 N. E. 1. c. 233.] (Italics ours.)

The case of New York Cent. R. Co. v. Warren Ross Lumber Co., 137 N. E. 324, 234 N. Y. 261, from which the last above quotation was taken and which has been referred to with approval in a number of opinions of the Federal courts, was a suit by a delivering carrier to recover freight charges on a carload of lumber shipped from

Michigan to the defendant in Jamestown, N. Y. The ultimate destination was Boston, Massachusetts. The car of lumber was reconsigned by defendant to a company at Boston which thereafter became bankrupt. The freight charges were not collected upon the delivery. It was held therein that, although there was no contractual relation existing between the carrier and the consignee by the mere designation of the latter as consignee, nevertheless the consignee became liable for the freight charges on his presumptive ownership of the goods and acceptance thereof and the services rendered by the carrier; and that the consignee having exercised ownership over the goods by directing their delivery to another, thereby became obliged to pay the freight charges and it was not relieved from its obligation merely because in the written directions to deliver to another it specified that delivery was to be upon collection of the freight charges; that the letter of the defendant directing delivery was such an act of dominion over the goods as to make the consignee liable for the freight charges.

In the case at bar, under the agreed statement of facts defendant became the consignee by order of the consignor, after which defendant exercised dominion over the shipment as consignee at St. Louis by reconsigning it on three different occasions. Such acts of dominion over the shipment, directing where it was to be delivered, were equivalent to an acceptance by defendant of delivery, under which it is to be treated as a presumptive owner. [New York Cent. R. Co. v. Warren Ross Lbr. Co., 224 N. Y. 261, 137 N. E. 324, 325. See also Wabash Ry. Co. v. Horn et al. (C. C. A. Seventh Cir.), 40 Fed. (2d) 905; New York Cent. R. Co. v. Brown et al., 281 Mich. 74, 274 N. W. 715.]

In Pittsburgh C. C. & St. L. Ry. Co. v. Fink, 250 U. S. 577, 40 Sup. Ct. 27, it was held that for its legal charges a common carrier by rail has a lien on the goods carried which can be discharged and the consignee become entitled to the goods only upon payment or tender of the legal charges.

Defendant, as consignee herein, was *prima facie* liable to plaintiff for the payment of the freight charges because the goods were delivered at New Orleans in accordance with defendant's instructions, which in legal effect constituted an acceptance by defendant. [Union Pac. R. R. Co. v. American Smelting & Refining Co. (C. C. A., Eighth Cir.), 202 Fed. 720; Louisville & N. R. Co. v. Central Iron & Coal Co., 265 U. S. 59, 44 Sup. Ct. Rep. 441; New York Cent. R. Co. v. York & Whitney, 256 U. S. 406, 41 Sup. Ct. Rep. 509.] Furthermore, Section 7 of the bill of lading herein provided that the consignee should be liable for the freight charges unless it notified the delivering carrier that it had no beneficial title in said property, and prior to the delivery thereof notified said carrier of the absence of beneficial title in itself, and also notified that carrier in writing of

the name and address of the beneficial owner of said property. There is nothing in the agreed statement of facts, or elsewhere in the record, to show that defendant, as consignee or in any other relationship, gave any such notice to plaintiff herein. Under the bill of lading covering the shipment herein, delivery was to be made to the consignee at St. Louis, and under the agreed statement of facts it appears that defendant, as consignee, postponed the time of delivery by reconsignment of the shipment, first to Chicago, then to East St. Louis, then to Memphis, and finally to New Orleans. At New Orleans delivery was made by plaintiff in accordance with the instructions of the defendant as consignee, whereupon the shipment became subject only to the further orders of said consignee. It is not disputed that the shipment arrived at New Orleans on May 1, 1937; that on May 3rd and 4th plaintiff notified defendant of the arrival of the shipment, and on those two separate days urgently requested instructions from defendant for disposition of the shipment, after which, on May 8, 1937, it sold the carload of lettuce for $135.00, leaving a balance due for freight charges in the amount sued for.

We are of the opinion that, under the facts and the law, plaintiff showed an implied contract between itself and defendant whereby the court was justified in holding defendant liable for the freight charges sued for.

The judgment is affirmed. *Hughes, P. J.*, and *Anderson, J.*, concur.