ORSCHELN BROTHERS TRUCK LINES, INC., Barry Schermer, Trustee, Appellant,

v.

FERGUSON MANUFACTURING, INC., Respondent.

No. WD 42343.

Missouri Court of Appeals, Western District.

June 26, 1990.

Thomas M. Pavelko, Norman W. Pressman, St. Louis, for appellant.

Richard N. Bien, Kansas City, for respondent.

Before TURNAGE, P.J., and LOWENSTEIN and GAITAN, JJ.

GAITAN, Judge.

Orscheln Brothers Truck Lines, Inc., appeals from an order granting Ferguson Manufacturing, Inc.'s motion for summary judgment in an action brought by the carri-

er's bankruptcy trustee for collection of tariff undercharges. We reverse.

Appellant Orscheln Brothers Truck Lines, Inc., ("Orscheln"), a Missouri corporation and common carrier, engaged in the transportation of property in interstate commerce pursuant to the authority of the Interstate Commerce Commission ("ICC"). Between January, 1981, and August, 1983, Ferguson Manufacturing, Inc., ("Ferguson") a Missouri corporation which produced plastic goods, hired Orscheln to transport property to five different consignees. The agreements between the two corporations were memorialized through several hundred bills of lading, which conformed to the straight uniform bill of lading short form prescribed by the ICC. As such, each bill of lading was subject to the terms and conditions of the long form, including § 7, a "nonrecourse clause"; however in each case, Ferguson, as the consignor, failed to execute the clause. Handwritten on each bill of lading was the term "coll.", which Orscheln concedes, in both its amended petition and its brief on appeal, referred to "freight collect." Orscheln transported the goods for compensation commensurate under tariffs filed with the I.C.C. in accordance with the requirements of the Interstate Commerce Act, Chapter 49 U.S.C.A. (Supp.1990).

Orscheln filed a Chapter 7 Bankruptcy petition on October 19, 1983, in the United States District Court for the Eastern District of Missouri. The district court appointed Barry S. Schermer, trustee. The trustee retained Carriers Traffic Service ("CTS"), by and through its president, Charles Byes, to audit Orscheln's freight bills for the purpose of determining if bills were properly rated according to tariffs filed by Orscheln with the ICC. As a result of his audit, Byes alleged that the claimed density of materials shipped was inaccurate and that, therefore, over sixty-eight thousand dollars of undercharges had occurred on bills of lading created between Orscheln and Ferguson.

On May 2, 1985, CTS requested, by letter, reimbursement of the undercharges from each consignee who received shipment. When CTS failed to receive satisfaction from the consignees, it made demand upon Ferguson for the undercharges, citing its authority to do so under 49 U.S.C.A. § 10761 et seq. (Supp.1990). When Ferguson denied responsibility, Orscheln's trustee filed an adversarial action against Ferguson on October 2, 1985, seeking collection of the undercharges.

Both parties filed motions for summary judgment, together with supporting affidavits. After a hearing on the motions, the trial court overruled Orscheln's motion and entered summary judgment in favor of Ferguson on June 29, 1989, holding that: (1) although Ferguson failed to execute § 7 on each bill of lading, evidence that the parties agreed that the shipments were to be transported freight collect through the notation on each bill of lading, and the circumstances surrounding the course of business, established that Orscheln agreed to collect freight charges from the consignees and waived any claim against Ferguson for undercharges; (2) the bills of lading established prima facie evidence of what property was actually shipped; and (3) Orscheln was equitably estopped from collecting additional charges. Orscheln now appeals from the summary judgment entered in favor of Ferguson.

A review of summary judgment is the equivalent to a review of a court-tried or equity proceeding to determine whether the judgment is sustainable as a matter of law. *Roberts Fertilizer, Inc. v. Steinmeier,* 748 S.W.2d 883, 886 (Mo.App.1988); *Schwartz v. Mills,* 685 S.W.2d 956, 957 (Mo.App. 1985). This Court must determine whether there is any genuine issue of material fact requiring trial, and whether the judgment is correct as a matter of law. *Roberts Fertilizer, Inc. v. Steinmeier,* 748 S.W.2d at 886; *State v. Board of Election Commissioners,* 686 S.W.2d 888, 892 (Mo.App. 1985); Rule 74.04(c). We review the entire record in a light most favorable to the party against whom summary judgment is entered. *Thompson v. Parker,* 608 S.W.2d 415, 416 (Mo. banc 1980).

## I.

The primary issue in this case focuses on the allocation of liability for freight charges under the terms of a uniform bill of lading as well as the Interstate Commerce Act, 49 U.S.C.A. § 10701 et seq. (Supp.1990). As this involves interstate commerce, the rights and liabilities of the parties are governed by federal statute, the bills of lading issued, and "common law rules as accepted and applied in federal tribunals." *Illinois Central R. Co. v. H.B. Friedman & Co.,* 236 Mo.App. 946, 161 S.W.2d 440, 443 (1942); *see e.g., Interstate Motor Freight System v. Wright Brok.,* 539 S.W.2d 764, 766 (Mo.App.1976).

Since 1919, the ICC has prescribed a Uniform Bill of Lading for use on all interstate domestic shipments of freight. *See Southern Pac. Transp. Co. v. Commercial Metals,* 456 U.S. 336, 342, 102 S.Ct. 1815, 1820, 72 L.Ed.2d 114 (1982). "A bill of lading serves three distinct functions: 'First a receipt for the goods; second a contract for their carriage; and third, documentary evidence of title to the goods.'" *In Re Chateaugay Corp. v. David Graham Co.,* 78 B.R. 713, 717 (Bkrtcy.S.D.N.Y. 1987), *citing, In re Bills of Lading,* 52 I.C.C. 671, 681 (1919). As the basic transportation contract between the shipper/consignor and carrier, its terms and conditions bind the shipper and all connecting carriers. *Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. at 342, 102 S.Ct. at 1820; *citing, Texas & Pac. R. Co. v. Leatherwood,* 250 U.S. 478, 481, 39 S.Ct. 517, 518, 63 L.Ed. 1096 (1919). In order to ascertain the agreement of the contracting parties, the provisions of the contract must be reviewed. *See Louisville & Nashville R.R. Co. v. Central Iron & Coal Co.,* 265 U.S. 59, 67, 44 S.Ct. 441, 442,

68 L.Ed. 900 (1923); *In re Bills of Lading,* 52 I.C.C. at 581; the terms of each provision have the force of statute. *Southern Pacific Transp. Co. v. Commercial Metals Co.,* 456 U.S. at 343, 102 S.Ct. at 1820.

Section 7 of the Conditions of the Bill of Lading provides that the consignor remains primarily liable for the freight unless otherwise indicated on the bill.[1] *See Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. at 343, 102 S.Ct. at 1820. To invoke § 7, the following provision, placed on the front of the bill of lading, must be signed by the consignor.

Subject to section 7 of conditions of applicable bill of lading, if this shipment is to be delivered without recourse on the consignor, the consignor shall sign the following statement.

The carrier shall not make delivery of this shipment without payment of freight and all other lawful charges.

By executing the § 7 nonrecourse provision, "a shipper can eliminate all liability whatsoever on the shipment, if shipped collect, or may eliminate any liability for any 'balance due' billing." Wade, *Hidden Liability For Freight Bills,* 43 J. of Mo.Bar 175, 177 (1987); *see also Atchison, Topeka & Santa Fe R.R. Co. v. C.G.F. Grain Co.,* 550 F.Supp. 1021, 1023 (D.Kan.1982).

In the present case, Ferguson, as the consignor, failed to sign the nonrecourse clause on the front of each bill of lading. However, the trial court, in its order for summary judgment, held that there was no genuine issue of material fact regarding the agreement of the parties that the shipments would be freight collect, as to the meaning of the term "freight collect," and that the parties' contracts, as embodied in the bills of lading, did not provide for Fer-

---

1. The pertinent reference in § 7 states:
   [T]he owner or consignee shall pay the freight and average, if any, and all other lawful charges accruing on said property; but, except in those instances where it may be lawfully authorized to do so, no carrier shall deliver or relinquish possession at destination of the property covered by this bill of lading until all tariff rates and charges thereon have been paid. The consignor shall be liable for the freight and all other lawful charges, ex-

cept that if the consignor stipulates, by signature, in the space provided for that purpose on the face of this bill of lading that the carrier shall not make delivery without requiring payment of such charges and the carrier, contrary to such stipulation shall make such delivery without requiring such payment, the consignor (except as hereinafter provided) shall not be liable for such charges....

guson to be liable for freight charges. We disagree.

The United States Supreme Court in *Southern Pacific Transport Co.*, held that the failure to execute the nonrecourse provision in the bill of lading specifically placed upon the consignor primary liability for freight charges. *Southern Pac. Transp. Co.*, 456 U.S. at 351, 102 S.Ct. at 1824. However, in finding original liability in such situations, the Court also noted that goods could be received or transported under such circumstances as to clearly indicate an exemption. *Id.* at 343, 102 S.Ct. at 1820, *citing, In re Bill of Lading*, 52 I.C.C. at 721. Thus failure to sign the § 7 nonrecourse provision does not create mandatory liability.

Section 7 allows allocation of primary liability. As the Court in *Southern Pac. Transp. Co.* recognized, the consignor could absolve itself of all liability for freight charges through its agreement with the carrier. The nonrecourse clause provides a means by which such an agreement can be evidenced. There is a presumption that the consignor is primarily liable, which may be rebutted by proof, either by the bill of lading, § 7, or other evidence which *clearly* indicates that the parties agreed that the consignor would assume no liability for payment of freight charges. *See, Flota Mercante GranColombiana v. Fla. Const. Equip.*, 608 F.Supp. 1515, 1524–25 (E.D.La.1985).

█ In the case at bar, Orscheln established a prima facie case of liability against Ferguson for freight charges by demonstrating that the § 7 provisions on the bills of lading were not signed. The burden then shifted to Ferguson to rebut this presumption. Thus this Court turns to the record to determine if the facts surrounding the business relationship between Orscheln and Ferguson clearly indicated an agreement to absolve Ferguson of primary liability.

█ While we concur with the trial court's determination that the facts are undisputed as to Orscheln's agreement to collect the freight charges from the consignees, we fail to find that by agreeing to such a method of payment, Orscheln waived any claim against Ferguson for freight charges or absolved Ferguson from primary liability. In *Long Island R. Co. v. Midland Valley Lumber Co.*, 237 Mo.App. 147, 164 S.W.2d 930 (1942), it was held that

> [e]ven though there is a stipulation in the bill of lading providing that the consignee shall pay the freight charges, that does not of itself relieve the consignor. The consignee, it is true, may be sued if he has received the goods in pursuance of a bill of lading imposing the payment of the freight charges on him. But the liability of the consignee does not depend, in such case, on the assumption that the original shipper would not be liable, but on a new contract to pay the freight charges evidenced by the bill of lading and the reception of goods under it. There is no shifting of liability. The contract of the consignor and that of the consignee are not inconsistent with each other; each is an original contract based on sufficient consideration.

*Id.* 164 S.W.2d at 933. Therefore, a notation or even an arrangement regarding freight collect, in and of itself, is insufficient to rebut the presumption of the consignor's primary liability. *See Flota Mercante GranColombiana v. Fla. Const. Equip.*, 608 F.Supp. at 1525; *Consolidated Freightways Corp. v. Pacheco International Corp.*, 488 F.Supp. 68, 70 (C.D.Ca. 1979).

█ Further we are not persuaded that the circumstances, as found by the trial court are sufficient to demonstrate that the parties agreed to absolve or even transfer primary liability for the shipment of goods. This Court recognizes that undercharge cases are typically brought by the trustee of a bankrupt carrier. *See United Trucking, Inc. v. Howell Industries*, 91 B.R. 30 (Bkrtcy.E.D.Mich.1988); *Silver Wheel Freightlines, Inc. v. AT & T Technologies, Inc.*, 86 B.R. 232 (D.Or.1986); *Gordon's Transports, Inc. v. General Mills, Inc.*, 58 B.R. 444 (Bkrtcy.W.D.Tenn.1986). Clearly the fact that undercharges are not discovered until an audit occurs pursuant to a bankruptcy filing is not unusual in the mo-

tor transport industry. Thus the fact that Orscheln did not request undercharges from Ferguson during their business relationship and prior to the bankruptcy proceeding is neither dispositive of an agreement to relieve Ferguson of primary liability nor provides persuasive evidence as to the intent of the parties.

■ We also fail to find that evidence showing that the consignees paid the original charges demonstrates an understanding between the parties to hold the consignees exclusively or even primarily liable for freight charges. While generally a consignee becomes liable for freight charges when it accepts freight, *see Chateaugay Corp. v. David Graham Co.,* 78 B.R. at 723; 49 U.S.C.A. § 10744(b) (Supp. 1990), this does not absolve the shipper of primary liability if any or all of the freight charges are not collected from the consignee. The obligation of the consignee is independent from the obligation of the consignor. *See In Re Roll Form Products, Inc.,* 662 F.2d 150, 154 (2nd Cir.1981). Thus the carrier is not required to exhaust all means to collect from the consignee, *Consolidated Freightways Corp. v. Pacheco International Corp.,* 488 F.Supp. at 70, and may look to the consignor for payment.

In the present case, the terms of the bills of lading are specific and clear. By failing to sign the § 7 nonrecourse provision, Ferguson remained primarily liable for freight charges. Respondent Ferguson provides no evidence, viewed individually or as a whole, that clearly demonstrates an intent by the parties to waive Ferguson's primary liability. We fail to find that the facts and circumstances surrounding the business relationship of Orscheln and Ferguson, as preserved in the record, rebuts the presumption created by the bills of lading. The trial court erred in granting respondent Ferguson summary judgment on this issue.

## II.

■ The trial court, in the alternative, held that Ferguson was entitled to summary judgment as a matter of law in that Orscheln was equitably estopped from asserting any claim for additional freight charges due to Ferguson's reasonable reliance on the original charges. We again do not concur with the trial court's finding.

49 U.S.C.A. § 10762(a)(1) (Supp.1990) requires all motor common carriers to publish and file tariffs containing their transportation rates with the I.C.C. Those tariffs have the force of law, and the carrier and shipper are bound by them. *Breman's Express Co. v. Mitchell Milling Co., Inc.,* 92 B.R. 636, 640 (Bkrtcy.W.D.Penn.1988). 49 U.S.C.A. § 10761(a) provides that a carrier subject to the jurisdiction of the I.C.C. is obligated to collect the rate published in its tariff. "The purpose of this statute is to prevent large suppliers and shippers from negotiating 'under-the-table' tariffs, lower than the filed tariffs, and thus undercutting competition from smaller suppliers who must also use the highways of interstate commerce to get their goods to market." *Caravan Refrigerated Cargo, Inc. v. Supreme Beef Processors, Inc.,* 864 F.2d 388, 390 (5th Cir.1989). Failure to collect the published rate constitutes a criminal offense under 49 U.S.C.A. § 11903(a) (Supp.1990). *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 705 F.Supp. 1401, 1404 (W.D.Mo.1988), *aff'd* 879 F.2d 400 (8th Cir.1989), *cert. granted,* —— U.S. ——, 110 S.Ct. 834, 107 L.Ed.2d 830 (1990).

The strict rule that the filed rate of a carrier is the only lawful charge from which no deviation is permitted, first set forth in *Louisville & Nashville R.R. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 495, 59 L.Ed. 853 (1915), is commonly referred to as the "filed rate doctrine." Historically, the I.C.C. and the courts have strictly adhered to this doctrine, refusing to waive undercharges for any reason, including misquotations or ignorance. *See Rebel Motor Freight, Inc. v. Southern Beverage Co., Inc.,* 673 F.Supp. 785, 788 (D.La.1987); *Motor Carrier Credit & Collection Co. v. Family Dollar Stores,* 670 F.Supp. 644, 645 (W.D.N.C.1987); *Inman Freight Systems, Inc. v. Olin Corp.,* 807 F.2d 117, 120 (8th Cir.1986). Pursuant to the filed rate doctrine, carriers have a right, as well as a duty, to recover the proper charges for

services performed. *See Southern Pac. Transp. Co. v. Commercial Metals Co.,* 456 U.S. at 343, 102 S.Ct. at 1820.

■ Respondent Ferguson contends that the filed rate doctrine is no longer absolute, and that courts may now forbid the collection of a filed rate or tariff when it is found that it would be unreasonable practice to allow such a collection. We disagree.

In 1980, Congress deregulated the motor carrier industry. *See* Motor Carrier Act of 1980, 49 U.S.C.A. § 10101 et seq. (Supp. 1990). This act encouraged "greater competition, broader operating authority, greater participation by minority motor carriers, and innovative pricing options." Allen, *The "Filed Rate" Doctrine v. Exercise of the CC's "Unreasonable Practice" Jurisdiction to Defeat Undercharge Claims,* 56 Transp.Prac.J. 294 (1989). With the new atmosphere of competition, wherein motor carriers could negotiate special rates lower than that on file, the I.C.C. made a major policy change regarding the strict enforcement of tariff rates. *See Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 705 F.Supp. at 1405. In *National Industrial Transportation League—Petition for the Institution of Negotiated Motor Common Carrier Rates, ex parte,* No. MC–177 (Oct. 29, 1986) ("Negotiated Rates"), the I.C.C. announced that in cases where the shipper and carrier *negotiated* and agreed on a rate *not published* in a tariff, it could review whether collection of undercharges would constitute an "unreasonable" practice. Under the policy change, the I.C.C. limited these reviews to situations where courts referred the reasonableness issue to the Commission for an advisory opinion. *See Breman's Express Co. v. Mitchell Milling Co., Inc.,* 92 B.R. at 640; Allen, *supra* at 295; 49 U.S.C. § 10701(a). Since the I.C.C.'s policy pronouncement in *Negotiated Rates,* the courts have been split as to the applicability of equitable defenses and as to the I.C.C.'s authority to render advisory opinions. *See Maislin Industries, Inc. U.S., Inc. v. Primary Steel, Inc.,* 879 F.2d 400, 404–05 (8th Cir.1989) (I.C.C. had primary jurisdiction to determine reasonableness of under-

charges and equitable defenses may be applicable in filed tariff case); *Caravan Refrigerated Cargo, Inc. v. Supreme Beef Processing, Inc.,* 864 F.2d 388, 390–91 (5th Cir.1989) (equitable defenses not available under filed rate doctrine and I.C.C.'s opinion in *Negotiated Rates* nonbinding); *Seaboard Systems R.R. Inc. v. United States,* 794 F.2d 635, 639 (11th Circ.1986) (I.C.C. may determine reasonableness of tariff undercharges).

Both respondent Ferguson in its brief, and the trial court in its order, rely on the *Maislin* case to support the finding of an equitable defense in a tariff case, as well as the concept of unreasonable practice. We find this reliance misplaced.

In *Maislin,* the carrier had filed tariffs with the I.C.C. containing rates and charges applicable to services provided to defendant Primary Steel. The two parties, however, had negotiated a rate less than the filed tariff, with the understanding that the carrier would file a lower negotiated rate with the I.C.C. The carrier, however, failed to file this negotiated rate. *Maislin Industries, U.S., Inc. v. Primary Steel,* 879 F.2d at 401. The facts of *Maislin* placed the case within the negotiated, unpublished rates exception contemplated by *Negotiated Rates.* Such facts are not present in the record before this Court.

We concur with the reasoning of the federal court in *INF, LTD v. Spectro Alloys Corp.,* 690 F.Supp. 808 (D.Minn.1988) *rev'd on other grounds,* 881 F.2d 546 (8th Cir.1989). A bankrupt motor carrier brought suit, contending that it had charged the shipper wrong rates based on the type of freight shipped. The district court found, in failing to adhere to the advisory opinion rendered by the I.C.C., that the filed tariff doctrine applied because the controversy was not about negotiated, unpublished tariffs, but rather involved incorrect published tariffs. *Id.* at 881.

In this dispute, no evidence in the record indicates that Orscheln and Ferguson negotiated for any rate other than that which was lawfully published with the I.C.C. The dispute is not one of negotiated, unpub-

lished rates but rather centers on the true density of the freight shipped, and the applicability of the correct *published* tariff. Therefore, the type of situation envisioned by the I.C.C. and enucleated in their *Negotiated Rates* opinion is not present in this case.

Further, it has been held that a determination of whether a rate is or will be reasonable or otherwise violates the Commerce Act is to be determined by the I.C.C. whose determination is subject to judicial review. *Pennsylvania R.R. Co. v. Chromcraft Corp.*, 424 S.W.2d 104, 106 (Mo.App. 1967). A state court may entertain jurisdiction only when the issue is the construction or interpretation of a published rate, but not the reasonableness of the rate. *Id.* We note that the Eighth Circuit, in affirming the district court's decision in *Maislin* to adopt the I.C.C.'s advisory opinion regarding reasonableness of collection of undercharges, held that the I.C.C. had primary jurisdiction to determine the reasonableness and lawfulness of a carrier's billing practices. *Maislin Industries, U.S., Inc. v. Primary Steel*, 879 F.2d at 405; *Seaboard Systems R.R., Inc. v. United States*, 794 F.2d 635, 638 (11th Cir.1986). "Thus, the court is required to enforce the tariff provisions of section 10761(a), *unless the I.C.C.*, upon referral by the ... court, determines that a carrier's billing practices were unreasonable and that to enforce the tariff requirement would be unlawful." *Maislin Industries, U.S., Inc. v. Primary Steel*, 879 F.2d at 405. (emphasis added).

No such advisory opinion has been requested or rendered by the I.C.C. regarding the dispute between Orscheln and Ferguson. Therefore, we fail to find that the trial court had jurisdiction to determine the reasonableness of filed tariffs and that it erred as a matter of law in granting respondent Ferguson summary judgment based on respondent's equitable defense of reliance.

### III.

The trial court also alternatively granted summary judgment to respondent Ferguson as a matter of law because the bills of lading established prima facie evidence of what freight was actually shipped. The court found that an affidavit of Byes, submitted to the trial court by appellant Orscheln, was insufficient to rebut the presumption established by the bills of lading in that Byes was not present at the time the freight items were boxed and shipped; that Byes' "post hoc analysis [was] neither helpful, nor persuasive."

■ Summary judgment is only appropriate when pleadings, depositions, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to a material fact. A genuine issue of fact exists when there is the slightest doubt about the facts. *American Bank of Princeton v. Stiles*, 731 S.W.2d 332, 337 (Mo.App.1987). However, it is no longer necessary for a movant to show by unassailable proof that he is entitled to summary judgment. *Hayes v. Hatfield*, 758 S.W.2d 470, 473 (Mo.App.1988).

While the trial court correctly found that the bills of lading provide prima facie evidence of what was shipped, *see Baltimore & Ohio R.R. Co. v. United States*, 217 F.Supp. 918, 924 (D.Md.1963), this presumption may be rebutted. To support its motion for summary judgment, respondent Ferguson relied on the bills of lading, as well as the affidavit of John Chaibotta of Central Traffic Service, who was retained by Ferguson to review the bills of lading and the claims of Orscheln. Based on his review of the bills of lading and the published tariffs of the appellant, Chaibotta disputed the findings of Orscheln's auditors. Orscheln, in its suggestions in opposition to summary judgment, provided the affidavit of Byes, whose opinion was based on personal review of the bills of lading, invoices, examination of samples of products shipped, and measurements of those samples.

■ An expert may base competent opinion upon matters within his personal knowledge or observations, upon competent evidence in the case, or upon both. *Wiley v. Pittsburg & Midway Coal Min. Co.*, 729 S.W.2d 228, 232 (Mo.App.1987). Byes' affidavit met this standard through

his personal observations as well as his examination of the bills of lading which were competent, admissible evidence. *See Colbert v. Mut. Ben. Life Ins. Co.,* 608 S.W.2d 119, 123 (Mo.App.1980). The trial court incorrectly dismissed the competency of Byes' affidavit on the basis that Byes was not present when the items were shipped.

Summary judgment is a drastic action. Viewed in the light most favorable to the appellant, Byes' affidavit raised factual issues sufficient to preclude summary judgment. The affidavit provided facts, which if proved, established the appellant's claim of undercharges.

We also note that facts provided in Chaibotta's affidavit indicated at least one possible discrepancy in the rated density and charges. We believe that the differing opinions of the two experts, as presented in the affidavits, created doubt about the correct calculation of densities, and that therefore, a genuine issue as to that material fact existed for trial. *See Pitman Mfg. Co. v. Centrolpolis Transfer Co.,* 461 S.W.2d 866, 872 (Mo.1970).

## IV.

■ While not addressed by either the parties or the trial court, this Court reviews *sua sponte,* the applicable statute of limitations in this case.

49 U.S.C.A. § 11706 (Supp.1990) provides for a limitation on actions by and against common carriers. Section 11706(a) provides:

> A common carrier providing transportation or service subject to the jurisdiction of the Interstate Commerce Commission under chapter 105 of this title or a freight forwarder must begin a civil action to recover charges for transportation or service provided by the carrier or freight forwarder within 3 years after the claim accrues.

Subsection (g) states that a claim accrues on delivery or tender of delivery by the carrier.

As previously noted, federal law governs this case. This Court has recognized that

[w]here congress has prescribed a period within which an action may be brought under a federal statute creating the right of action, the provision will be regarded as one of substantive right setting a limit to the existence of the obligation arising under the statute, and in such a case an action may be brought in a state court within the period prescribed by federal statute....

*Thomsen v. Mill,* 248 S.W.2d 6, 10 (Mo. App.1952), *citing,* 53 C.J.S. Limitations of Actions, § 32. Further, while we note that this action has been brought by Orscheln's bankruptcy trustee, the Bankruptcy Code Provision, 11 U.S.C.A. § 108(a) which extends limitation periods, has no application to postpetition claims. *See United Trucking v. Howell Industries,* 91 B.R. 30, 31 (Bkrtcy.E.D.Mich.1988); *Northern Specialty Sales, Inc. v. INTV Corp.,* 57 B.R. 557, 559 (Bkrtcy.D.Or.1986).

In the present case, bills of lading in dispute governed shipments delivered in 1981 through 1983. While the copies of the bills of lading, as well as the delivery receipts presented to this Court for consideration, were of such poor quality as to preclude further review of this issue, we believe that at least some of the actions based on the contested bills of lading may be barred by the federal statute of limitations.

For all the aforesaid reasons, we find that the granting of summary judgment was erroneous in that it was not based on fully developed, agreed upon or uncontested facts from which we can find as a matter of law that respondents were entitled to summary judgment. This Court reverses the trial court's order of summary judgment for respondent, and remands this case to the trial court for further proceedings with directions to determine which if any actions may be barred under the applicable statute of limitations.

All concur.